UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-02782-TWP-MPB |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) ) ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND APPEAL OF THE MAGISTRATE JUDGE'S DECISION**

This matter is before the Court on Defendant The Travelers Indemnity Company of America's ("Travelers") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Filing No. 71.) After Travelers denied a hail and windstorm claim submitted under a condominium insurance policy, Plaintiff Legend's Creek Homeowners Association, Inc. ("Legend's Creek") brought this action alleging Travelers breached their insurance contract and acted in bad faith. (Filing No. 11.) Also pending is Travelers' Appeal of the Magistrate Judge Order ordering an appraisal. (Filing No. 83.) Because the Court **grants** Travelers' Motion for Summary Judgment, there is no need for an appraisal. Therefore, the Court **denies** Travelers' Appeal of the Magistrate Judge's Decision because that issue is moot.

**I.      BACKGROUND**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, they are presented in the light most favorable to Legend's Creek as the non-moving party. *See Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.,* 477, U.S. 242, 255 (1986).

Legend's Creek is an Indiana Corporation that operates a condominium association consisting of five residential buildings, a series of detached garages, and a clubhouse located in Indianapolis, Indiana (the "Property"). (Filing No. 73-2 at 13-15.) Travelers is a Connecticut corporation that, among other things, provides insurance to residential properties. (Filing No. 73-1.) Travelers issued a condominium insurance policy (the "Policy") to Legend's Creek for coverage for the period September 1, 2015 to September 1, 2016. (Filing No. 73-3.) The Policy insured Legend's Creek against the risk of direct physical loss or damage to the Property subject to certain terms and conditions. *Id.* The Policy contained the following provision:

> No one may bring a legal action against us under this Coverage Form unless:
>
> a. There has been full compliance with all of the terms of this Coverage Form; and
> b. The Action is brought within 2 years after the date on which direct physical loss or damage occurred.

*Id.* at 44.

The Policy also contains the following limitation of liability on a replacement cost basis:

> (c) We will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs (i), (ii) or (iii) subject to Paragraph (d) below:
>
> (i) The Limit of Insurance applicable to the lost or damaged property;
> (ii) The cost to replace the lost or damaged property with other property:
>
>   a) of comparable material and quality; and
>   b) used for the same purpose; or
>
> (iii) The amount actually spent that is necessary to repair or replace the lost or damaged property.

*Id*. at 40.

On or about May 1, 2016, the Property was damaged by hail and wind during a storm. (Filing No. 73-2 at 12-13.) The storm damage encompassed the roofs, gutters, and north elevations of siding on four residential buildings and four detached garages. (Filing No. 73-4 at 16-18.) At

the time of loss there were two different types of siding installed at the Property. *Id.* at 24. Buildings 1 and 2 and Garages 1 and 2 were clad with a fiber cement siding product manufactured by James Hardie known as "HardiePlank – Select Cedarmill." (Filing No. 73-5 at 34.) There is conflicting evidence in the record as to whether the siding was pre-finished, meaning it was painted in the factory and then installed, or whether it was field-finished, meaning it was primed in the factory and painted after installation. *Id.* at 53; Filing No. 73-6. For purposes of this Entry, the Court accepts Legend's Creek's position that the HardiePlank was pre-finished. At the time of the replacement, James Hardie no longer manufactured this specific siding. (Filing No. 73-10 at 1.) Buildings 3 and 4 and Garages 3 and 4 were clad with a pre-finished hardboard siding product manufactured by Masonite. (Filing No. 73-5 at 19-21; 26-27.) The Masonite siding was also discontinued. (Filing No. 80-1 at 9.)

On September 22, 2016, Legend's Creek retained a public adjuster, Kris Kassen ("Kassen") of Spartan Claims, to assist with its claim for the loss and damage caused by the May 1, 2016 storm. (Filing No. 73-4 at 14.) That same day, Kassen notified Travelers of the loss to the Property. *Id.* Spartan Claims' contract with Legend's Creek entitled it to ten percent of the insurance proceeds paid by Travelers. (Filing No. 73-9 at 1.)

On October 6, 2016, Kassen learned from a representative of James Hardie that the James Hardie siding installed on Buildings 1 and 2 and their corresponding garages was no longer in production. *Id.* at 19. On November 3, 2016, Travelers issued payment to Legend's Creek in the amount of $644,674.87, which represented the estimated cost to replace the roofs and gutters as well as to repair the damaged north elevations of siding, less the deductible and recoverable depreciation. (Filing No. 73-11; Filing No. 73-4 at 22.) This amount reflected the idea that the north facing siding would undergo spot repairs rather than complete replacement. (Filing No. 73-

3

4 at 36.) Upon receipt of this initial payment, Kassen emailed Steven Knopp ("Knopp"), the adjuster handling the claim for Travelers, to tell him that his estimate "is one of the most well written and respectable estimates I've ever seen come out of Travelers, or any other carrier for that matter." (Filing No. 73-12.)

But Kassen soon changed his mind. January 20, 2017, Kassen informed Knopp that the proposed spot repairs to the damaged siding were no longer acceptable to Legend's Creek—it wanted complete replacement of the north-facing siding. (Filing No. 73-4 at 23-24.) On February 24, 2017, Travelers issued a supplemental payment of $238,766.88 for increased work on roof replacement, which would alleviate the need to replace the siding. *Id.* at 26; Filing No. 73-11 at 2. Travelers later issued another supplemental payment of $28,438.02 for increased scope of repair to the siding. (Filing No. 73-4 at 30-31; Filing No. 73-11 at 2.)

On September 28, 2017, Kassen emailed Knopp to notify him of Legend's Creek's position that the north-facing siding needed to be replaced and spot repairs were insufficient. (Filing No. 73-13.) Travelers prepared an estimate that included replacement of the north-facing siding and sent it to Kassen. (Filing No. 73-14.) The following day, Knopp replied with his own estimate, which also called for replacement of only the north-facing siding. (Filing No. 73-15.) After discussing the difference in these estimates with Travelers' siding consultant, Kassen sent Knopp an estimate that resolved the differences. (Filing No. 73-16.) On February 7, 2018, Knopp sent Kassen a final estimate of an additional payment of $44,007.01, that reflected those revisions and provided for replacement of all north-facing siding. (Filing No. 73-17.) In his email, Knopp apologized for the delay and requested that Kassen inform him if this last estimate was "good to settle" the matter between the two parties. *Id.* at 1.

4

The February 7, 2018 estimate provided for replacement of the north-facing siding on Buildings 1 and 2 with primed but unfinished fiber cement product and replacement of the north-facing siding on Buildings 3 and 4 with primed and pre-finished hardboard product, and an allowance of approximately $10,000.00 to paint the unfinished siding. ([Filing No. 73-11 at 2](); [Filing No. 73-17 at 19-24]().) On February 13, 2018, Kassen sent an e-mail to Legend's Creek's property manager, board of directors, and contractor stating:

> I am writing this email to act as directions to all parties regarding the future progress of this claim and the series of events that shall take place….
>
> At this point, I have finalized with Travelers the estimate that includes all previous items as well as the approved north elevations of siding for replacement…. I have gotten the carrier to agree to replacement of the north elevations, with the expectation that the north elevation siding at Legend's Creek will be replaced with a like kind/quality product; the closest match available. The four large buildings along with the four garages will have their north elevations of siding replaced with PreFinished, Primed James Hardie HardiePlan[k] – Select Cedarmill 8.25"…. This siding will NOT be painted thereafter as it was not painted prior to the loss. Amos will be installing the new siding, with me present to oversee production and gather evidence. I will then evaluate the argument of full replacement of all of the siding due to a gross mismatch IF there is a gross mismatch. We are expecting that there will be, however, we must have the work done prior to making that argument.
>
> There will be no warranty on this new unpainted siding, as the manufacturer's installation instructions state that product should be painted after being installed within 180 days…. This should not be alarming, as there is not currently a manufacturer's warranty on the existing siding.
>
> However, do not fret. State building code mandates that all manufacturer installation instructions should be adopted as building code. Your policy has an additional endorsement on it known as "Ordinance or Law" or "Code Upgrade." This endorsement will allow me to argue that the new siding must be painted per that manufacturer's installation instructions, in correspondence with state building code. I will not be making that argument until I have had enough time to argue full replacement of the siding after the north elevations have been replaced.
>
> Remember that this is somewhat a game of chess. Gabe and I have poised Legend's Creek to ultimately win this game. At this point, we must proceed with the moves that we have planned out several turns ahead of Travelers. If everything goes according to plan, Legend's Creek will ultimately have all new siding, which will then be painted in accordance with the manufacturer's installation instructions.

5

> The instructions above are how I am advising all parties involved to proceed. If there are any questions or concerns, please address them with me promptly.

(Filing No. 73-18.)

The email demonstrates that Kassen, as well as Amos Exteriors, the company that would be replacing the siding, expected the new siding to be a "gross mismatch" with the existing siding, necessitating replacement of all siding. (Filing No. 73-4 at 51-52; Filing No. 73-8 at 50-51.) Amos Exteriors proceeded to replace the siding on the north elevations of the four buildings and detached garages with primed unfinished HardiePlank – Select Cedarmill. (Filing No. 73-8 at 49, 56.) However, Legend's Creek did not paint the unfinished siding within 180 days of installation as recommended by the manufacturer. (Filing No. 73-2 at 69-70.)

On April 13, 2018, following the installation of the siding, Kassen emailed Knopp asserting that Travelers owed for replacement of all siding. (Filing No. 73-20.) In particular, the email stated:

> [i]t is my assertion that Travelers owes for replacement of the remaining elevations of siding to include the necessary trim work and painting as there is now a gross mismatch of the damage portion of the property whereas before the loss there was not. This is resulting in a diminution of property value.

*Id*. at 2. This email was the first time Legend's Creek had requested replacement of any siding other than the north-facing siding that was damaged in the storm. Kassen's email also stated, "[a]t this time, I would like to also request an extension of replacement cost benefits on this claim as we are quickly approaching the May 1st date of loss, and there is still reconciliation outstanding." *Id.* at 3.

On April 15, 2018, Knopp responded, "Thank you for the email and info. I will review fully upon my return to the office later this week." (Filing No. 73-21 at 2.) On April 24, 2018, Knoop wrote "[w]anted to give you an update to advise that your inquiry to the claim is still currently being reviewed." *Id*. at 1. On April 26, 2018, Kassen asked by email "[w]ill an extension

6

be granted so that we can continue to resolve this outstanding issue? I know the DoL is coming up here shortly…". *Id.* at 1.

On May 11, 2018, Knopp emailed Kassen to inform him that Travelers was preparing a supplemental payment based on the February 7, 2018 estimate, which provided for replacement of only the north-facing siding. ([Filing No. 73-22](#).) During a telephone call on June 6, 2018, Knopp informed Kassen that Travelers had denied Legend's Creek's claim for replacement of all siding. ([Filing No. 73-24](#); [Filing No. 73-4 at 65](#).) On June 21, 2018, Travelers issued the final supplemental payment of $44,007.01 for replacement of the north-facing siding. ([Filing No. 73-11 at 2](#).) Legend's Creek filed this suit on July 23, 2018 alleging breach of contract and bad faith. ([Filing No. 73-25](#).)

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). A disputed fact must be "material," which means that it might affect the outcome of the case under the applicable substantive law. *Liberty Lobby*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts do not preclude summary judgment. *Id.* A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

### III.   DISCUSSION

Regarding Count I:  Breach of Contract, Travelers argues summary judgment is appropriate because Legend's Creek's claims are barred by the two-year Suit Limitation Provision in the Policy.  Regarding Count II:  Bad Faith, Travelers argues that it handled Legend's Creek's claim in good faith, and Legend's Creek lacks evidence to the contrary.  Because it is dispositive, the Court begins its analysis with breach of contract claim.

**A.   Count I:  Breach of Contract**

Legend's Creek  argues that because Travelers did not pay for the replacement of the other three sides of the siding and did not pay to properly repair the north facing siding, it breached the Policy.  The Policy states that no one may bring legal action against Travelers unless that action is brought within two years of the date of loss. ([Filing No. 73-3 at 44](#).)  It is undisputed that the date of loss in this case is May 1, 2016, and Legend's Creek did not commence this action until July 23,

2018—more than two years after the date of loss. Travelers argues this delay entitles it to summary judgment. Legend's Creek's defense to this argument is two-fold, they argue that Travelers waived the two-year period as a matter of law, or a factual dispute exists regarding waiver. ([Filing No. 79 at 16](#).)

Legend's Creek specifically argues (1) that public policy supports waiver rather than forfeiture, (2) that Travelers had a duty to notify Legend's Creek of its intent to strictly enforce the limitation period, and (3) that Travelers implicitly waived its right to enforce the limitation provision by continuing to negotiate and investigate the claim beyond the two-year period. Alternatively, Legend's Creek contends that it substantially complied with the limitation provision, and this particular provision of the contract is ambiguous. Legend's Creek also maintains that Travelers waived its right to enforce the suit limitation provision in the Policy. Its argument breaks down into three parts, which the Court will discuss separately.

### 1. **Public Policy**

Legend's Creek argues that finding waiver here comports with public policy in Indiana. Suit limitation clauses in insurance contracts are unquestionably legal in Indiana. *Schafer v. Buckeye Union Ins. Co.*, 381 N.E.2d 519, 522 (Ind. Ct. App. 1978) ("It is well established in Indiana that, while not favored, … contractual limitations shortening the time to commence suit are valid, at least so long as reasonable time is afforded."). Legend's Creek notes that Indiana courts disfavor these provisions because (1) they contravene statutes of limitation set by the legislature, (2) there is a societal interest in support of commercial insurance of loss, and (3) a limitation period might cause a party to waste resources by bringing suit only to preserve its contractual right to do so, although litigation may ultimately be unnecessary. ([Filing No. 79 at 16-17](#), (citing *Schafer*).)

The Court accepts these public policy considerations as relevant to the rules of waiver in Indiana but does not consider them to be determinative of individual disputes. In other words, these policy considerations may have been the rationale for development of a waiver rule that is especially generous to policy holders, but the Court must still evaluate whether a Defendant has waived its right to enforce a suit limitation provision under that rule. The Court addresses that question as to the specific facts of this case in Section III.A.3 of this Entry.

### 2. Duty to Notify

Legend's Creek argues that "Travelers had a duty to speak if it was going to strictly enforce the two-year limitation." (Filing No. 79 at 19.) It cites the following maxim of Indiana law:

> [I]t is the duty of the insurers, pending the consideration of the proofs of loss, to bear themselves with all good faith towards the claimant, and if they are satisfied with the proof furnished, and have, or have not, the right to demand further proof before their liability becomes fixed, they ought to make known to the assured the fact and nature of these demands without unnecessary delay.

*Huff v. Travelers Indem. Co.*, 363 N.E.2d 985, 991-92 (Ind. 1977) (quoting *Aetna Ins. Co. v. Shreyer*, 85 Ind. 362, 366-67 (Ind. 1882)). Legend's Creek interprets this statement of law as a duty requiring an insurer to notify the insured that it intends to enforce the suit limitation provision, but the Court does not see it that way. A clearer recitation of Indiana's standard can be found in the paragraph preceding that quote. "[T]he inquiry is whether anything has been done in the relationship between the insurer and the insured which would cause the insured to reasonably believe the limitation period will not be insisted upon." *Huff* at 991. The Court views this second quotation as the more definitive recitation of Indiana's standard due to its prevalence in the caselaw that has followed *Huff*. *See, e.g., Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 415 (Ind. Ct. App. 1999) (quoting *Wingenroth v. American States Ins. Co.*, 455 N.E.2d 968, 970 (Ind. Ct. App. 1983)).

The Court determines that Indiana law does not impose an affirmative duty on an insurer to notify its insured of its intent to enforce the suit limitation provision. Instead, the question is whether a reasonable insured would have the impression that the insurer *does not* intend to enforce the provision. The Court addresses that question in the next subsection.

### 3.     Implicit Waiver by Continued Negotiation and Investigation

Suit limitation provisions in insurance contracts may be waived either expressly or impliedly. *Summers*, 719 N.E.2d at 414. "A waiver or estoppel may result from acts of insurer causing insured or claimant under the policy to delay bringing suit until after the time provided for in the policy." *Id.* at 414-15 (quoting *Huff*) (internal quotations omitted). Contractual limitation periods may be waived if an insurer's conduct is sufficient to create a reasonable belief on the part of the insured that strict compliance with the policy provision will not be required. *Id.* (quoting *Wingenroth*, 455 N.E.2d at 970. Thus, the focus of the court's inquiry is whether the insurer has done anything that would cause the insured to reasonably believe the limitation provision will not be enforced.

Legend's Creek argues there are communications between the parties that show Travelers did not intend to enforce the two-year limitation period for bringing suit. First, after Legend's Creek notified Travelers of the loss on September 22, 2016, the parties "consistently and frequently discussed settling" the claim. ([Filing No. 79 at 22](#).) Second, Legend's Creek states that "[o]n April 13, 2018, Kassen brought to Travelers' attention the gross mismatch between the siding and requested replacement for the other three sides and an extension past the two-years." *Id.* Travelers responded, several times informing Kassen that it was reviewing his request but not addressing his query about the two-year period. Third, Travelers continued to act on the claim past the May 1, 2018 date on which the two-year window to file suit expired. On that day, Travelers agreed to

11

release additional funds related to repair and replacement of siding, then twice during May indicated it was still considering Legend's Creek's request to replace all siding, only to deny that request on June 6, 2018. On June 21, 2018, Travelers paid more to Legend's Creek for the replacement of the north-facing siding.

The posture of this case entitles Legend's Creek to have all factual inferences drawn in its favor. But the Court does not ignore facts that are inconvenient to the non-movant nor does it accept the non-movant's assertions if they are not supported by evidence in the record. With that in mind, the Court finds it necessary to correct Legend's Creek's narrative so that it conforms with the record evidence.

First, Legend's Creek contends that Kassen twice asked Travelers' representative for an extension of the two-year suit limitation period and was ignored on both occasions. The record shows that is not the case. On April 13, 2018, when Kassen first informed Knopp that he believed Travelers must pay for the replacement of all siding on the damaged buildings, he also "request[ed] an extension of replacement cost benefits on this claim as we are quickly approaching the May 1st date of loss". (Filing No. 73-20 at 3.) He did not mention filing suit or the suit limitation provision of the Policy. On April 26, 2018, Kassen asked if "an extension [will] be granted so that we can continue to resolve this outstanding issue?" (Filing No. 73-21 at 1.) Again, the discussion is regarding the claim only, and he did not mention filing suit or the suit limitation provision.

Perhaps if this were the only evidence in the record about these requests, Legend's Creek would be entitled to an inference that it requested an extension of the suit limitation period and Travelers ignored that request. But other evidence, specifically Kassen's deposition testimony, indicates that his request did not refer to the suit limitation provision.

Q Okay. And what is the – what are you asking for an extension of?

>   A I became aware later that Travelers does not have, at least to my understanding, a date at which – or a point at which after the loss occurs that they will cut off replacement cost benefits, in other words, recoverable depreciation. And so I had just assumed that that may – that may be a provision of the policy.
>
>   Q Okay. So you were requesting an extension of time to claim replacement cost benefits because, at that point in time, you assumed that there was a deadline for that?
>
>   A Correct.
>
>   Q Okay. Were you requesting an extension of anything else in that e-mail?
>
>   A Specifically on April 26?
>
>   Q Yes. I'm just referring to the e-mail itself.
>
>   A I don't believe so.

([Filing No. 73-4 at 62-63](#).) Given Kassen's admission that he was not referring to the suit limitation provision, no reasonable juror could find that Legend's Creek made a request for an extension of the suit limitation period and Travelers ignored that request.

Second, Travelers mischaracterizes the claims process as "continued negotiations … leading up to and after the two-year anniversary of the date of loss." ([Filing No. 79 at 23](#).) This characterization ignores the specifics of the parties' discussions, which, until April 13, 2018, only involved repair or replacement of the north-facing siding that was damaged in the storm. Kassen testified in his deposition that prior to sending the email on April 13, 2018, he had never requested that Traveler's pay for anything more than replacement on the north elevation of siding (Filing No. 73-4 at 61.) Travelers approved Legend's Creeks' claim as to the north-facing siding, and while the very last of that money was paid out after the two-year suit limitation period had expired, none of that money is at issue in this case. The breach Legend's Creek alleges is based on Travelers' refusal to pay for replacement of the siding on the other faces of its buildings. Again, this siding was not

damaged in the storm nor did Legend's Creek claim it needed replacement until April 13, 2018—102 weeks into the 104-week suit limitation period.

Moreover, evidence in the record indicates Legend's Creek knew it expected to make a claim for replacement of all siding at least a month before it informed Travelers of that expectation. In an email to Legend's Creek's principals on February 13, 2013, Kassen wrote that he intended to evaluate whether Legend's Creek could make a claim for replacement of all siding based on a "gross mismatch" between the new north-facing siding and the rest of the siding. He said that he expected there would be a gross mismatch but did not report that expectation to Travelers until a month later. ([Filing No. 73-18](Filing No. 73-18).) Based on that chicanery, it is disingenuous to assert that Travelers dragged its feet by continuing to investigate the claim beyond the suit limitation period.

The record shows that Legend's Creek essentially made a new claim two weeks prior to the two-year limitation date. Prior to that point, it had only requested replacement of the north-facing siding that was damaged in the storm. Requesting replacement of *all* siding is not a "negotiation," as Legend's Creek frames it, but a new claim. It does not stem from the same date of loss, as no parties contend any siding but that facing north was damaged in the storm on May 1, 2016. And it does not involve the same portion of the covered property. The parties engaged in no negotiations on this claim to replace all the siding. Legend's Creek made the claim and Travelers denied it. That is not a negotiation.

The point of the claims process is to enforce the Policy the two parties agreed to. In other words, after damage or loss occurs, the two parties look to the contract to determine what each party is entitled to and responsible for. The Court is persuaded by Travelers argument that the record shows Legend's Creek's agent, Kassen, viewed the claims process as a "game" in which the goal was to out strategize an opponent and gain an advantage. In this game, he inverted the claims

process, first determining a desired result (for Legend's Creek to "ultimately have all new siding") and then devising a plan to achieve that result through the claims process.

That is the version of the facts supported by the record. It does not include any action on the part of Travelers that would give Legend's Creek a reasonable impression that Travelers did not intend to enforce the suit limitation provision of the Policy. Nor is there evidence that Travelers' actions caused Legend's Creek to delay filing suit. Thus, Travelers has not waived its right to rely on Legend's Creek's noncompliance with that provision.

Legend's Creek cites to *Huff*, in which the Indiana Supreme Court found that an insurer waived the suit limitation provision and continued to exchange letters regarding the claim through and beyond the limitation period. 363 N.E.2d at 992. But *Huff* is distinguishable because in *Huff* the parties were discussing the same claim up until and through the expiration of the suit limitation period. Here, Legend's Creek sprung a new claim on Travelers two weeks before expiration of the suit limitation period and now attempts to use that late claim to escape its bargained-for obligation to file suit within two years of loss if it files suit at all.

Legend's Creek also relies on *Schafer*, explaining that the parties in that case were engaged in active negotiations when the limitation period lapsed. But Legend's Creek and Travelers were not actively negotiating in April and May of 2018. The insureds in *Schafer*, after giving notice, submitting proof of loss, and providing examinations under oath, offered a compromise settlement of their fire damage claim, provided counter-offers and then made another settlement proposal before the suit limitation period expired. *Schafer* at 520. Here, Travelers had approved and was in the process of paying out Legend's Creek's claim for replacement of the north-facing siding. Meanwhile, Legend's Creek filed a claim for replacement of all siding, which Travelers later denied. Legend's Creek's rhetorical tactic is to call its gamesmanship and the late filing of a new

15

claim "negotiating" and then compare its facts to cases in which the parties were actively negotiating. But no negotiation was underway in this case at the end of the limitation period no matter how many times Legend's Creek insists it was.

For those reasons, Travelers has not waived its right to enforce the two-year suit limitation provision of the Policy. Because Legend's Creek did not comply with that provision, Travelers is entitled to judgment as a matter of law.

### 4. <u>Substantial Compliance</u>

Alternatively, Legend's Creek argues Travelers' Motion for Summary Judgment should be denied because Legend's Creek substantially complied with the suit limitation provision. It cites one case in support of this argument, *Cont'l Ins. Co. v. Thornburg*, 219 N.E.2d 450 (Ind. Ct. App. 1966). In that case, the Indiana Court of Appeals found that an insurer had waived the contractual suit limitation period because the insured relied upon a letter from the insurer asking for an in-person meeting. *Id.* at 454. The court determined under principles of equity that the suit limitation period was at least suspended between the day the insured received the letter and the day the meeting took place. That suspension meant that the insured had ultimately filed suit within the limitation period. The case does not discuss a substantial compliance exception to a contraction suit limitation provision.

Even if *Continental* can be read to create an exception for substantial compliance, the Court would not apply it here. The principles of equity do not aid Legend's Creek in this circumstance, as the evidence shows it was the party attempting to game the claims adjustment process and that it was Legend's Creek that dragged its feet in asking for replacement of all siding. It would contravene equitable principles to allow an insured to circumvent a suit limitation provision by filing a new claim at the eleventh hour that the insurer must evaluate.

### 5. <u>Ambiguity</u>

Last, Legend's Creek argues that the suit limitation provision is ambiguous. "The Policy is ambiguous whether the insured must file suit within two years of date of loss where the claim is still under review at the two-year deadline". (Filing No. 79 at 31.) Legend's Creek argues that the Policy provision is self-contradictory because in certain cases it would not be possible to comply with both provisions. Again, the provision reads:

> No one may bring a legal action against us under this Coverage Form unless:
> 
> a. There has been full compliance with all of the terms of this Coverage Form; and
> b. The action is brought within 2 years after the date on which direct physical loss or damage occurred.

Filing No. 73-3 at 44. Legend's Creek argues that for cases where the investigation of the claim takes more than two years from the date of loss, an insured cannot both comply with all the terms of the coverage form and file suit within two years.

The Court disagrees. An insured can comply with the coverage form by cooperating in the investigation and allowing the insurer to inspect the property and still file suit within two years if necessary. Indeed, if Legend's Creek had filed suit before May 1, 2018, it would have complied with both provisions, as no evidence showed it failed to comply with the terms of the Coverage Form. The provision is similar to one considered in *Royer v. USAA Cas. Ins. Co.*, 781 F.Supp.2d 767, 770 (N.D. Ind. 2011). The suit limitation provision in that case read:

> **7. Suits Against Us.** No action can be brought against us unless you have:
> 
> a. given us notice of the loss,
> 
> b. complied with all other provisions, and
> 
> c. started the action within one year after the date of the loss.

Like the provision at issue here, that provision requires the insured to both comply with other provisions of the policy and file suit within a certain time frame of the date of loss. The *Royer* court found that provision to be unambiguous, and this Court agrees. There is nothing inherently contradictory about a provision that requires the insured to comply with the policy and to file suit within a certain time frame.

**B.    Bad Faith**

To prove bad faith, Legend's Creek must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability. *Villas at Winding Ridge v. State Farm Fire & Cas. Co.*, 942 F.3d 824, 833 (7th Cir. 2019). Legend's Creek must also prove Travelers' "conscious wrongdoing" or "culpable mental state". Summary judgment on a bad faith claim is required when the insured presents no evidence or facts that the insurer acted with a culpable state of mind, or where the undisputed facts demonstrate that an insurer "had a rational and principled basis for denying coverage". *Thompson Hardwoods, Inc. v. Transportation Ins. Co.*, 2002 WL 440222, at *5 (S.D. Ind. Mar. 15, 2002); *Masonic Temple Association of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21 (Ind. Ct. App. 2002) (affirming partial summary judgment in favor of insurer on insured's bad faith claim where facts demonstrated insured had a "rational, principled basis" for denying liability).

Travelers argues that Legend's Creek "cannot come close to meeting its heavy burden of establishing, by clear and convincing evidence, that Travelers knew that there was no legitimate basis for denying liability for replacement of all of the siding at the Property." (Filing No. 82 at 11.) Travelers contends Legend's Creek has presented no evidence that shows it acted with the requisite culpable state of mind.

Legend's Creek does not dispute that Travelers had a legitimate basis for denying liability for replacement of the east, west, and south elevations of undamaged siding. Instead, Legend's Creek argues that Travelers consistently made unfounded delays in processing the claim. ([Filing No. 79 at 34](#).) The Court is unpersuaded by Legend's Creek's argument. The designated evidence is replete with examples of the parties good faith negotiations during the periods of time that Legend's Creek now contends were unfounded delays. *See* ([Filing No. 79 at 18](#), 22, 24.) A good faith dispute about the amount of a valid claim does not supply the grounds for a bad faith claim. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993). Poor judgment, negligence, and lack of a diligent investigation are likewise insufficient to establish bad faith. *State Farm Mut. Auto. Ins. Co. v. Gutierrez*, 844 N.E.2d 572, 580 (Ind. Ct. App. 2006). Contrary to Legend's Creek's contentions, the designated evidence shows that Travelers had a rational and principled basis for its actions. As noted in the background section of this Entry, Kassen admitted as much in his deposition testimony.

More importantly, Travelers cannot be liable for bad faith in the absence of a contractual breach. In Indiana, claims made against insurers for breach of the duty of good faith, while sounding in tort, are nonetheless subject to contractually agreed upon limitations provisions if brought by the insured. *Troxell v. Am. States Ins. Co.,* 596 N.E.2d 921, 925 (Ind. Ct. App. 1992) (suit limitation provision barred bad faith claim). Because the Court has determined there was no breach of contract, Travelers is entitled to summary judgment on the bad faith claim as well.

## IV. CONCLUSION

The Court holds that Legend's Creek failed to comply with the suit limitation provision of the Policy. Legend's Creek was represented by a public adjuster, consulted with counsel during the claim process, had a copy of the policy and was aware that it had two years from the date of

loss to commence legal action, yet never requested an extension of time to file suit and failed to file suit within the time frame required in the contract. Accordingly, it has no right to relief under that contract. Therefore, Travelers' Motion for Summary Judgment, ([Filing No. 71](#)), is **GRANTED** as to Legend's Creek's claims for breach of contract and bad faith. As that ruling resolves this suit, there is no need to continue the process of appraisal. Accordingly, Travelers' Appeal of the Magistrate Judge's Order, ([Filing No. 83](#)), is also **GRANTED**. The Court will issue final judgment in a separate order.

    **SO ORDERED.**

Date: 10/6/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

William David Beyers
BUCHANAN & BRUGGENSCHMIDT, P.C.
bbeyers@bbinlaw.com

David E. Miller
SAEED & LITTLE LLP
david@sllawfirm.com

Matthew P. Fortin
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
mfortin@fgppr.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

Matthew S. Ponzi
FORAN GLENNON PALANDECH & PONZI, PC
mponzi@fgppr.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com