## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-02782-TWP-MPB |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

## ENTRY ON PLAINTIFF'S MOTION TO AMEND OR ALTER JUDGMENT

This matter is before the Court on a Motion to Amend or Alter Judgment filed by Plaintiff Legend's Creek Homeowners Association, Inc. ("Legend's Creek"), pursuant to Federal Rule of Civil Procedure 59(e) (Filing No. 90).  In support of the Motion, Legend's Creek filed a Memorandum in Support of Motion to Reconsider Entry on Defendant's Motion for Summary Judgment and Final Judgment [Dkts. 86 and 87] in which it contends that the Court erred in several respects in its summary judgment entry (*see* Filing No. 91).  For the following reasons, the Court **denies** the Motion to Reconsider.

## I.  BACKGROUND

After an insurance coverage dispute, Legend's Creek sued its insurer Defendant Travelers Indemnity Company of America ("Travelers") for breach of contract and bad faith (*see* Filing No. 35 at 3–5).  Specifically, Legend's Creek contended that it was owed replacement siding for the entirety of several buildings it owned—despite only one side on each of the buildings suffering damage—so that it "would have [ ] matching siding" when the existing siding had been

discontinued. *Id.* at 3. Moreover, Legend's Creek contended that Travelers acted in bad faith when it "knew that the siding was discontinued and could not be matched." *Id.* at 4.

In April 2020, at the behest of Legend's Creek, (*see* Filing No. 58), the Court ordered the parties "to commence the appraisal process as outlined in the Policy." (Filing No. 81 at 6.) The Court specifically noted, however, "that the appraisal can be used after the filing of the complaint as part of the discovery process" and that it "could help in the fact-finding, and hopefully settlement discussions, while preserving any legal arguments, coverage or otherwise, that Travelers believes precludes its liability." *Id.* at 3, 4. In other words, the Court clarified, this conclusion "regarding the appraisal has no outcome on" any analysis concerning "Travelers' pending summary judgment [arguing] that Legend's breach of contract count is barred by the Policy's two-year statute of limitation for a legal action." *Id.* at 5. The Court further noted that "[t]o conclude that Legend's may exercise its contractual appraisal right is not to endorse its theory of its entitlement to a larger recovery; nor does it preemptively endorse the appraiser's fact-finding as binding notwithstanding any legal defenses Travelers may assert." *Id.* at 6. This later-completed appraisal determined that Travelers owed "$257,256.47 for the additional actual cash value owed for covered damage". (Filing No. 90-1 at 1; *see also* Filing No. 90-2 at 1–6.) Travelers issued payment on October 1, 2020, for this amount (*see* Filing No. 90-3). But a few days later, on October 6, 2020, the Court— as eluded to above as a possibility—entered summary judgment in favor of Travelers for the failure of Legend's Creek to file suit within the two-year limitation provision of the controlling insurance policy (Filing No. 86 at 19–20). That afternoon, Travelers stopped payment on its October 1, 2020 check (*see* Filing No. 90-8). On November 3, 2020 Legend's Creek filed the instant Motion seeking reconsideration of the summary judgment ruling.

## II.  <u>LEGAL STANDARD</u>

Although motions to reconsider are not specifically authorized by the Federal Rules of Civil Procedure, courts in the Seventh Circuit apply Rule 59(e) or Rule 60(b) standards to these motions.  *Smith v. Utah Valley Univ.*, 2015 U.S. Dist. LEXIS 70271, at *3–4 (S.D. Ind. June 1, 2015).  A motion to alter or amend under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  If timely filed, a motion styled as a motion to reconsider should be considered under Rule 59(e).  *Kiswani v. Phoenix Sec. Agency, Inc.*, 584 F.3d 741, 742 (7th Cir. 2009).  Because Legend's Creek filed its "Motion to Reconsider" precisely twenty-eight days after the Court issued its Order, the Court will analyze the Motion as a motion to alter or amend under Rule 59(e).

The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the Court to reconsider matters "properly encompassed in a decision on the merits."  *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989).  "A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment."  *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case."  *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).  A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence."  *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010).  A manifest error "is not demonstrated by the disappointment of the losing party.  It is the wholesale disregard, misapplication, or failure to recognize controlling precedent."  *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted). Furthermore, "a Rule 59(e) motion is not an

opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, at *7 (S.D. Ind. Mar. 24, 2009).

## III.  DISCUSSION

Legend's Creek purports that reconsideration is warranted for five reasons.  Each is discussed, in turn, below.

### A.    Appraisal Award

First, Legend's Creek asserts that "[n]ow that the appraisal award has been finalized," the Court should reevaluate "certain factual determinations that equity did not support waiver of the two-year" limitations period (Filing No. 91 at 2 (citations omitted)).  This later award "shows that Legend's [Creek] was not making a fraudulent claim or otherwise seeking to game the system," and that "Travelers owed this money from the start."  *Id.*  Indeed, Legend's Creek urges that the "Court should consider the appraisal award as new evidence supporting that Legend's Creek's position was correct all along and rebutting the inference of gamesmanship made by Travelers." *Id.* at 4.  To Legend's Creek, "[t]he appraisal award plainly reflects that there was one claim, and that the other three sides of the siding clearly needed to be replaced."  *Id.* at 5.  "[B]ecause the Court made a factual finding that Legend's [Creek's] request to replace the other three sides of the affected buildings was a 'new claim' made at the 11th hour," the Court should reconsider given this "clear-cut appraisal." *Id.* (citations omitted).  Moreover, the award rebalances the equities the Court previously considered, Legend's Creek contends, when "[t]he appraisal award shows that Travelers plainly misadjusted this claim the entire time." *Id.* Simply put, "if Travelers would have had a competent and responsive adjuster adjusting the claim," the siding issue could have been resolved before the two-year limitation deadline.  *Id.* at 5–6.

In response, Travelers asserts that the "Appraisal Award has nothing to do with the Court's Order and should not be considered new evidence." (Filing No. 102 at 3.)  Traveler's contends "the appraisal process was time barred and should never have been demanded by Legend's Creek fifteen (15) months into litigation and 459 days after the suit limitation period expired" and "should never have been permitted to proceed." *Id.* The Court identified this, Travelers argues, when it "recognize[d] that *both* the complaint *and* the appraisal process were untimely" and ordered "the process to stop." *Id.* at 4 (emphasis in original).  The appraisal, then, cannot serve as "new evidence." *Id.*  Concerning Legend's Creek's assertion "that Travelers breached the contract by not paying what the appraisers allegedly found during their inspection of the property," the disparity between the initial estimate and later appraisal award is merely "evidence that the parties disagreed over the amount of loss." *Id.*  Travelers argues that "appraisal does not have the same rigorous rules and discovery process as federal court litigation," rendering any determination "not evidence of the merits of either party's litigation position". *Id.* Additionally, the argument that the issue could have been resolved before the limitations period expired rings hollow when the public adjuster for Legend's Creek "intentionally sat on this siding issue from February 13, 2018, through April 13, 2018, as part of the 'chess game'". *Id.* at 5.  And this adjuster too must have been "incompetent" when "Travelers was issuing payments based on" his estimates. *Id.*  Finally, whether the demand for replacement of the entirety of the buildings' siding "is considered a new claim or part of the original claim does not change the fact that there is no evidence that Legend's Creek requested an extension of the suit limitation period." *Id.* at 6.

In reply, Legend's Creek argues that "the appraisal award is binding on Travelers. Its own policy makes it binding, as does an Order of this Court sending the parties to appraisal." (Filing No. 103 at 1.)  And the Court, Legend's Creek contends, "did not recognize the appraisal process

as 'untimely;' it rather ordered the appraisal process to cease." *Id.* at 2.   Importantly, argues Legend's Creek, "[t]he appraisal award is a critical piece of evidence that came to light after the parties had already briefed this Court on summary judgment." *Id.*   This increased amount serves as "critical evidence that Travelers plainly underpaid this claim." *Id.*

The Court finds that the outcome of the appraisal does not alter the issue it is asked to reconsider—that is, whether equity supported waiver of the two-year limitation period by Travelers.   Despite this new appraisal award, Travelers did nothing that would give Legend's Creek a reasonable impression that Travelers did not intend to enforce the suit limitation provision of the Policy.   Legend's Creek argues that the appraisal award rebuts any inference of gamesmanship on its part (*see* Filing No. 91 at 4).   But never has a term befitted a scenario better:  the public adjuster for Legend's Creek literally stated that waiting for the anticipated gross mismatch upon installation (to then demand a full re-cladding of the buildings) was all part of the "game of chess" he was playing with Travelers (Filing No. 73-18).   Indeed, the public adjuster believed he had "poised Legend's Creek to ultimately win this game," advising that Legend's Creek "must proceed with the moves that we have planned out several turns ahead of Travelers." *Id.*   Considering these forthright statements, it is bold for Legend's Creek to now claim—even in light of any difference between an appraisal and earlier payments—that it was then not "seeking to game the system." (Filing No. 91 at 2.)   Any monetary disparity does not go to the issue of whether Travelers acted in a way that it intended to relinquish the limitation provision; instead, as Travelers argued, any difference simply demonstrates "that the parties disagreed over the amount of loss." (Filing No. 102 at 4.) There is no need to reconsider the Court's Entry based on this appraisal award amount.

B.      **Counsel for Legend's Creek**

Second, Legend's Creek argues—contrary to a statement in the Court's summary judgment entry—that it "was not represented by counsel until after the two-year period had already expired." (Filing No. 91 at 6.)  To Legend's Creek, the Court's finding that it "'consulted with counsel during the claim process' . . . is unsupported by the factual record and constitutes a manifest error of fact." *Id.* at 6 (quoting Filing No. 86 at 19).  While it did receive legal advice "regarding painting of the property," Legend's Creek asserts that it "'was not represented by counsel until after the limitation period lapsed.'" *Id.* (quoting Filing No. 79 at 10).  "This erroneous factual finding is worth reconsideration," Legend's Creek argues, "because it contributed to this Court's conclusion that Legend's failed to timely file suit." *Id.* at 7.

In response, Travelers argues that "the record supports the assertion" that Legend's Creek consulted with counsel before the limitation period ran (Filing No. 102 at 6 (citing Filing No. 73-2 at 69–70 (noting that "counsel" advised Legend's Creek not to paint the newly installed siding))). Moreover, this fact does not constitute "new evidence" because it was available while the summary judgment was pending. *Id.*  And most significantly, engagement with counsel is "irrelevant" when the briefing and ultimate entry did not "turn[ ] on whether the policyholder was represented by counsel prior to filing suit." *Id.* All told, "the legal representation issue is a red herring": the public adjuster for Legend's Creek had been working with it since September 22, 2016, and was "required by law to be familiar with insurance policies." *Id.* at 7 (citations omitted).  "Whether counsel was advising Legend's Creek prior to suit or not," Travelers concludes, "the evidence is clear that Legend's Creek is solely responsible for its failure to timely file suit or demand appraisal." *Id.* at 8.

In reply, Legend's Creek redoubles that "deposition testimony does not, when construed in the light most favorable to Legend's, indicate that Legend's [Creek] consulted with legal counsel during the claim process." (Filing No. 103 at 2.)  The fact that present counsel for Legend's Creek "signed their names" to the brief opposing summary judgment arguing that Legend's Creek had not been in consultation with counsel at the time alone "should have been sufficient to rebut" the contention. *Id.* "[R]econsideration of this factual mistake" is necessary, Legend's Creek concludes, "because it contributed to the Court's conclusion that Legend's failed to timely file suit." *Id.* at 3.

The Court did not discuss at length any consultation between Legend's Creek and counsel before the suit limitation period ran:

> Legend's Creek was represented by a public adjuster, *consulted with counsel during the claim process*, had a copy of the policy and was aware that it had two years from the date of loss to commence legal action, yet never requested an extension of time to file suit and failed to file suit within the time frame required in the contract.

(Filing No. 86 at 19–20 (emphasis added).)  This brief clause in the Entry's conclusion section is all the Court penned about Legend's Creek and counsel.  Nowhere does the Entry place any weight on this detail.  *Cf. id.* at 11–16 (discussing actions of *public adjuster* at length).  Instead, this passing statement merely indicates that Legend's Creek consulted about the siding with its attorney—not that it received guidance on how to proceed with its claims.  In short, this fact did not contribute to the Court's decision, let alone drive the result through manifest error.  Instead, as Travelers notes, "[n]one of the law addressed in the Summary Judgment Order or the briefing turns on whether the policyholder was represented by counsel prior to filing suit." (Filing No. 102 at 6.)

Moreover, contrary to the argument of Legend's Creek, the record supports the Court's statement—Legend's Creek consulted with its attorney at the time it was engaged in the claims process (*see* Filing No. 73-2 at 69–70). Although Legend's Creek asserts that "[t]he deposition testimony never referenced any time period as to when" counsel advised Legend's Creek to forego

8

painting the siding, (Filing No. 91 at 6), the root question inquired as to whether the "siding [was] painted *within 180 days of being installed*." (Filing No. 73-2 at 69 (emphasis added).) As the siding was installed around March 12, 2018, (*see* Filing No. 73-4 at 54–56 (confirming that an email sent on that date "would have been around the time, either during or right after they were finishing up replacing the north elevations of siding")), any consultation with an attorney about whether to paint the newly-installed siding would have assuredly occurred within the period when the parties were discussing the claim. Regardless, because any attorney consultation did not go toward the Court's decision—and the record supports the Court's statement—the Court finds no reason to, as Legend's Creek requests, "reconsider and reverse its ruling" based on the Entry's cursory remark.

## C.   **Duty of Insurer to Inform**

Third, Legend's Creek argues that "Indiana law unequivocally requires an insurer to inform the insured if it will enforce a suit limitation period." (Filing No. 91 at 7.) Specifically, Legend's Creek takes issue with the Entry's statement that Legend's Creek "'essentially made a new claim two weeks prior to the two-year limitation date.'" *Id.* (quoting Filing No. 86 at 14). Instead, Legend's Creek contends, "the appraisal award makes clear that this was not a new claim" and instead "was encompassed within the existing claim from May 1, 2016." *Id.* "[I]f Travelers[] would have competently adjusted the claim initially," Legend's Creek argues, it "would never have been in this position." *Id.* at 9. This purportedly deliberate sluggishness allowed Travelers "'to lull an insured into not pressing his rights and to then deny liability on the basis of the limitation period.'" *Id.* (quoting *Huff v. Travelers Indem. Co.*, 363 N.E.2d 985, 992 (Ind. 1977)). Legend's Creek points to an Indiana Court of Appeals case instructing that an insurer cannot "'maintain[ ] that the time specified in the limitation provision continued to run'" after "'requesting [the insured]

to refrain from filing suit while the company's adjuster reviewed the claim.'" *Id.* at 9–10 (quoting *Continental Ins. Co. v. Thornburg*, 219 N.E.2d 450, 454 (Ind. Ct. App. 1966).  This surely, Legend's Creek maintains, "imposes a requirement on insurers to explicitly invoke the suit limitation provision if they intend to enforce it." *Id.* at 10.  Legend's Creek surmises, because "this was not a new claim" and Travelers has been rewarded for "its failures in terms of not promptly responding and not correctly adjusting the claim from the beginning," the Court should reconsider its ruling. *Id.*

In response, Travelers argues that it "is not required to inform [Legend's Creek] of the suit limitation provision under the circumstances." (Filing No. 102 at 8.)  Noting that Legend's Creek "again trots out previously rejected arguments," Travelers maintains that under Indiana caselaw, an insurer need not "inform an insured that it will enforce the suit limitation provision.[1] *Id.* Moreover, *Huff* is inapplicable when there "the insured gave notice of the claim at issue within a few weeks of the loss" and here "the remaining portion of Legend's Creek's claim that is the subject of this lawsuit was not brought to Travelers' attention until . . . barely two weeks before the suit limitation period expired." *Id.* at 9. This case is not an example of "an insurer lulling its insured into not pressing his rights and then ambushing the insured with the passage of the limitation period" when "there was no negotiation with respect to the undamaged elevations of the buildings" and "Legend's Creek demanded replacement of these elevations for the first time two weeks before the expiration of the limitation period" *Id.* at 9–10.

---

[1] *See, Summers v. Auto-Owners Ins. Co.,* 719 N.E.2d 412, 416 (Ind. Ct. App. 1999) ("Insurance Company did not reach the settlement negotiation stage. Indeed, no offer of money ever occurred. Instead, Insurance Company simply attempted to investigate the claim pursuant to its policy. Thus, the exception does not apply, and Insurance Company was under no obligation to expressly put Summers on notice that litigation within one year would be necessary if he wished to pursue his claim further."); *Schafer v. Buckeye Union Ins. Co.*, 381 N.E.2d 519 (Ind. Ct. App. 1978) (explaining that an insurer generally has no duty to advise the insured of a suit limitation provision in an insurance policy).

In reply, Legend's Creek contends that the core issue is whether Travelers' "actions gave Legend's [Creek] the impression that it would not need to resort to litigation to recover its losses." (Filing No. 103 at 3.)  When viewing the facts in its favor, Legend's Creek argues that "[t]he record is replete with instances of Travelers dragging its feet in paying this claim": it "drastically underpaid" Legend's Creek initially, waited too long to issue "payment for replacement siding," and, ultimately, "ran out the clock by stalling at every available opportunity." *Id.* Travelers' purposeful lethargy, as well as it "ignor[ing]" requests for extensions of policy benefits and "negotiat[ing] the claim for months after the anniversary," shows that it attempted "to game the claim process in its favor." *Id.*

The assertions presented by Legend's Creek merely refurbish much of the argument it already raised on summary judgment.  Based on this same argument, the Court concluded that the designated evidence showed that Legend's Creek knew it was going to ask Travelers to replace the three undamaged elevations of the buildings two months before it made the request, and for whatever reason, Legend's Creek waited two months to move its chess piece.  It is clear that Travelers did not lull Legend's Creek into believing that the two-year suit limitation would not be enforced, and affirmative notice is not required in Indiana.  As previously stated, "a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC*, 2009 U.S. Dist. LEXIS 25485, at *7.  Moreover, the Court has already determined that the appraisal award does not change the Entry's outcome, *see supra* Section II.A, and it will not entertain this overt invitation to "relitigate" this already-decided issue (see Filing No. 86 at 10–11 (determining "that Indiana law does not impose an affirmative duty on an insurer to notify its insured of its intent to enforce the suit limitation provision").

### D.     <u>**Obligation of Travelers to Pay Appraisal Award**</u>

Fourth, Legend's Creek argues that the Court should "clarify that the appraisal award is valid and that Travelers is obligated to pay it." (Filing No. 91 at 10.)  In fact, even if "the Court is not going to reverse its decision, equity would still favor obtaining the correct result which is reflected in the appraisal award."  *Id.* at 11.  Because the appraisal process is separate under the policy from the provision concerning the suit limitation period, "the equitable result" is for the Court to order Travelers to pay the award.  *Id.*

In response, Travelers asserts that the Court, in its summary judgment entry, properly halted the appraisal process Travelers objected to all along." (Filing No. 102 at 10).  A decision to reverse that decision, as supported by reasoning in persuasive caselaw, "would allow an insured to wait years after a suit limitation provision expired to demand appraisal."  *Id.* (citing *Johnson v. Mut. Serv. Cas. Ins. Co.*, 732 N.W.2d 340, 346 (Minn. Ct. App. 2007); *Nat'l Refrigeration, Inc. v. The Travelers Indem. Co. of Am.*, 947 A.2d 906, 910 (R.I. 2008)).

In reply, Legend's Creek argues that "this Court's previous Order [(ordering the appraisal)] and Travelers' own policy make the appraisal award binding." (Filing No. 103 at 4.) In fact, "Travelers' appraiser agreed to the ultimate appraisal award, and Travelers began issuing payments to Legend's [Creek] to satisfy the award."  *Id.*  Though Travelers complains "that it was compelled to engage in the process," the result requires payment by "the plain terms of its policy."  *Id.*  The policy "does not impose any time limit precluding the payment of an appraisal award," and Travelers may not "change the terms of its policy simply because it does not want to honor an appraisal award that it agreed to pay."  *Id.*

The Court's summary judgment entry determined that because it granted Travelers' Motion for Summary Judgment, "there is no need to continue the process of appraisal." (Filing No. 86 at

20.)  As definitively voiced in the Entry ordering that appraisal, determining under the policy that "Legend's [Creek] may exercise its contractual appraisal right is not to endorse . . . the appraiser's fact-finding as binding notwithstanding any legal defenses Travelers may assert."  (Filing No. 81 at 6; *id.* at 5 ("Travelers' Policy provides the insurer the right to retain its right to deny the claim. In other words, the policy expressly contemplates that the insurer may deny coverage and assert defenses—including that the Policy's coverage does not extend to matching replacement siding with existing siding—*after* an appraisal has taken place to determine the amount of loss.") (quotation omitted).)  The Court does not now deviate from this conclusive statement and will not "affirm the validity of the appraisal award" and order that Travelers pay it (*see* Filing No. 91 at 12).

### E.    Clerical Error

Fifth, Legend's Creek notes that while the Court "stated on the first page of its Memorandum that it '*denies* Travelers' Appeal of the Magistrate's decision because that issue is moot' . . . , in the final judgment recorded on the docket, the Clerk recorded that the Court *granted* Travelers' appeal." (Filing No. 91 at 11) (quoting Filing No. 86 at 1) (emphasis added). Legend's Creek succinctly concludes that "[t]his was clearly a clerical mistake, and the Court should correct the record." *Id.*

In response, Travelers points out that "Legend's Creek does not recommend a specific correction." (Filing No. 102 at 11.)  For its part, however, "Travelers respectfully suggests that the sentence on page 1 of the Order noting that Travelers' Appeal of the Magistrate Judge's Order is moot should be changed to 'granted' as it is on page 20 of the Summary Judgment Order." *Id.* Because summary judgment resolved the suit "in its entirety," Travelers concludes, its objection to the Entry ordering the appraisal should be granted.  *Id.*

To be sure, the first page of the Court's summary judgment entry reads that "the Court **denies** Travelers' Appeal of the Magistrate Judge's Decision because that issue is moot," while page twenty and the docket entry state that "Travelers' Appeal of the Magistrate Judge's Order, (Filing No. 83), is also **GRANTED**." (Filing No. 86.)  The first page of the summary judgment entry contains a scrivener's error and, consistent with the rationale expressed throughout the entry, should instead read that "the Court **grants** Traveler's Appeal of the Magistrate Judge's Decision". That correction will be made,[2] but because the docket entry (and the entry's conclusion section) accurately reflects the disposition of that motion, the Court need not reconsider its entry on this minor typographical error.

## IV.   <u>CONCLUSION</u>

For the preceding reasons, the Court **DENIES** the Motion to Amend or Alter Judgment filed by Legend's Creek (Filing No. 90).

**SO ORDERED.**

Date:  1/29/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

William David Beyers
BUCHANAN & BRUGGENSCHMIDT, P.C.
bbeyers@bbinlaw.com

David E. Miller
SAEED & LITTLE LLP
david@sllawfirm.com

---

[2] In  a separate Entry, the Court will docket an amended entry as of today's date to correct the scrivener's error so that the sentence on page one of the Summary Judgment Order is corrected to state "Travelers' Appeal of the Magistrate Judge's Order is granted."

Matthew P. Fortin
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
mfortin@fgppr.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

Matthew S. Ponzi
FORAN GLENNON PALANDECH & PONZI, PC
mponzi@fgppr.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com