

# UNITED STATES DISTRICT COURT
## Southern District of Indiana

### Roger A. G. Sharpe, Clerk of Court

| | | | |
|---|---|---|---|
| Birch Bayh Federal Building & U.S. Courthouse, Room 105 46 East Ohio Street Indianapolis, IN 46204 (317) 229-3700 | U.S. Courthouse, Room 104 921 Ohio Street Terre Haute, IN 47807 (812) 231-1840 | Winfield K. Denton Federal Building & U. S. Courthouse, Room 304 101 NW Martin Luther King Blvd. Evansville, IN 47708 (812) 434-6410 | Lee H. Hamilton Federal Building & U.S. Courthouse, Room 210 121 West Spring Street New Albany, IN 47150 (812) 542-4510 |

February 17, 2021

David E. Miller
SAEED & LITTLE LLP
133 West Market Street
No. 189
Indianapolis, IN 46204

Eric C. McNamar
LEWIS WAGNER LLP
501 Indiana Avenue
Suite 200
Indianapolis, IN 46202

RE:  LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC. v. THE TRAVELERS INDEMNITY COMPANY OF AMERICA

CAUSE NO:  1:18-cv-02782-TWP-MPB

Dear Appellant and Appellee:

Please be advised that the Amended Notice of Appeal filed in 1:18-cv-02782-TWP-MPB has been forwarded to the United States Court of Appeals for the Seventh Circuit. The Clerk of the Seventh Circuit will assign an appellate case number, docket the appeal, and notify case participants of the Seventh Circuit case number assigned to this matter.

Please review Seventh Circuit Rule 10 (enclosed) for guidance regarding record preparation.

Please contact the Clerk's office with any questions or concerns.

Sincerely,
Roger A. G. Sharpe
Clerk of Court

By Laura Townsend, Deputy Clerk
812-542-4511

## <u>Selected Rules for Reference</u>

**CIRCUIT RULE 10. Preparation and Accessibility of Record in District Court Appeals**

**(a) Record Preparation Duties.**

**(1) Within 14 days of filing the notice of appeal the district court must ensure the district court docket is complete and made available electronically to the court of appeals.**

**(2) The clerk of the district court must prepare and hold any confidential record or exhibit not available electronically on the district court docket until requested by the court of appeals.**

**(3) Counsel must ensure, within 21 days of filing the notice of appeal, that all electronic and non electronic documents necessary for review on appeal are on the district court docket.**

(b) *Correction or Modification of Record.* A motion to correct or modify the record pursuant to Rule 10(e), Fed. R. App. P., or a motion to strike matter from the record on the ground that it is not properly a part thereof must be presented first to the district court. That court's order ruling on the motion must be included as part of the record and a notice of the order must be sent to the court of appeals.

(c) *Order or Certification with Regard to Transcript.* Counsel and court reporters are to utilize the form prescribed by this court when ordering transcripts or certifying that none will be ordered. For specific requirements, see Rules 10(b) and 11(b), Fed. R. App. P.

(d) *Ordering Transcripts in Criminal Cases.*

(1) *Transcripts in Criminal Justice Act Cases.* At the time of the return of a verdict of guilty or, in the case of a bench trial, an adjudication of guilt in a criminal case in which the defendant is represented by counsel appointed under the Criminal Justice Act (C.J.A.), counsel for the defendant must request a transcript of testimony and other relevant proceedings by completing a C.J.A. Form No. 24 and giving it to the district judge. If the district judge believes an appeal is probable, the judge must order transcribed so much of the proceedings as the judge believes necessary for an appeal. The transcript must be filed with the clerk of the district court within 40 days after the return of a verdict of guilty or, in the case of a bench trial, the adjudication of guilt or within seven days after sentencing, whichever occurs later. If the district judge decides not to order the transcript at that time, the judge must retain the C.J.A. Form No. 24 without ruling. If a notice of appeal is filed later, appointed counsel or counsel for a defendant allowed after trial to proceed on appeal in forma pauperis must immediately notify the district judge of the filing of a notice of appeal and file or renew the request made on C.J.A. Form No. 24 for a free transcript.

(2) *Transcripts in Other Criminal Cases.* Within 14 days after filing the notice of appeal in other criminal cases, the appellant or appellant's counsel must deposit with the court reporter the estimated cost of the transcript ordered pursuant to Rule 10(b), Fed. R. App. P., unless the district court orders that the transcript be paid for by the United States. A non-indigent appellant must pay a pro rata share of the cost of a transcript prepared at the request of an indigent co-defendant under the Criminal Justice Act unless the district court determines that fairness requires a different division of the cost. Failure to comply with this paragraph will be cause for dismissal of the appeal.

(e) *Indexing of Transcript.* The transcript of proceedings to be part of the record on appeal (and any copies prepared for the use of the court or counsel in the case on appeal) must be bound by the reporter, with the pages consecutively numbered throughout. The transcript of proceedings must contain a suitable index, as well as the following information:

(1) An alphabetical list of witnesses, giving the pages on which the direct and each other examination of each witness begins.

(2) A list of exhibits by number, with a brief description of each exhibit indicating the nature of its contents, and with a reference to the pages of the transcript where each exhibit has been identified, offered, and received or rejected.

(3) A list of other significant portions of the trial such as opening statements, arguments to the jury, and instructions, with a reference to the page where each begins.

When the record includes transcripts of more than one trial or other distinct proceeding, and it would be cumbersome to apply this paragraph to all the transcripts taken together as one, the rule may be applied separately to each transcript of one trial or other distinct proceeding.

(f) *Presentence Reports*. The presentence report is part of the record on appeal in every criminal case. The district court must maintain this report under seal, unless it has already been placed in the public record in the district court. If the report is under seal, the report may not be included in the appendix to the brief or the separate appendix under Fed. R. App. P. 30 and Circuit Rule 30. Counsel of record may review the presentence report but may not review the probation officer's written comments and any other portion submitted in camera to the trial judge.

(g) *Effect of Omissions from the Record on Appeal.* When a party's argument is countered by a contention of waiver for failure to raise the point in the trial court or before an agency, the party opposing the waiver contention must give the record cite where the point was asserted and also ensure that the record before the court of appeals contains the relevant document or transcript.

NOTE:   The complete Federal Rules of Appellate Procedure & Rules of the 7th Circuit Court of Appeals are available at: http://www.ca7.uscourts.gov/Rules/Rules/rules.pdf

  


# UNITED STATES DISTRICT COURT
## Southern District of Indiana

**Roger A. G. Sharpe, Clerk of Court**

| | | | |
|---|---|---|---|
| Birch Bayh Federal Building<br>& U.S. Courthouse, Room 105<br>46 East Ohio Street<br>Indianapolis, IN  46204<br>(317) 229-3700 | U.S. Courthouse, Room 104<br>921 Ohio Street<br>Terre Haute, IN 47807<br>(812) 231-1840 | Winfield K. Denton Federal Building<br>& U. S. Courthouse, Room 304<br>101 NW Martin Luther King Blvd.<br>Evansville, IN 47708<br>(812) 434-6410 | Lee H. Hamilton Federal Building<br>& U.S. Courthouse, Room 210<br>121 West Spring Street<br>New Albany, IN 47150<br>(812) 542-4510 |

February 17, 2021

RE:  LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC. v. THE TRAVELERS INDEMNITY COMPANY OF AMERICA

CAUSE NO:  1:18-cv-02782-TWP-MPB

Dear Appellant:

An Amended Notice of Appeal was filed in the above case on February 12, 2021. However, a "Docketing Statement" was <u>not filed</u> along with the Amended Notice of Appeal, as required by <u>Circuit Rule 3(c)</u> of the U.S. Court of Appeals for the Seventh Circuit. A copy of the rule is attached for reference.

Pursuant to the Seventh Circuit Rule 3(c), the appellant must serve on all parties a docketing statement and file said statement with the Clerk of the Seventh Circuit within seven (7) days of the filing of the Notice of Appeal.

<u>IMPORTANT</u>: Please do not submit the docketing statement to the U.S. District Court. The docketing statement must be filed electronically with the Seventh Circuit pursuant to Circuit Rule 25.  If the appellant is proceeding pro se, then the docketing statement should be filed on paper by mailing the same to the address below:

> Christopher Conway, Clerk
> United States Court of Appeals
> 219 South Dearborn Street, Suite 2722
> Chicago, IL 60604

Please contact the Clerk's office with any questions or concerns.

> Sincerely,
> Roger A. G. Sharpe,
> Clerk of Court
>
> By Laura Townsend, Deputy Clerk
> 812-542-4511

## Selected Rules for Reference

CIRCUIT RULE 3. Notice of Appeal, Docketing Fee, Docketing Statement, and Designation of Counsel of Record

(a) *Forwarding Copy of Notice of Appeal.* When the clerk of the district court sends to the clerk of this court a copy of the notice of appeal, the district court clerk shall include any docketing statement. In civil cases the clerk of the district court shall include the judgments or orders under review, any transcribed oral statement of reasons, opinion, memorandum of decision, findings of fact, and conclusions of law. The clerk of the district court shall also complete and include the Seventh Circuit Appeal Information Sheet in the form prescribed by this court.

(b) *Dismissal of Appeal for Failure to Pay Docketing Fee.* If a proceeding is docketed without prepayment of the docketing fee, the appellant shall pay the fee within 14 days after docketing. If the appellant fails to do so, the clerk is authorized to dismiss the appeal.

(c)(1) *Docketing Statement.* The appellant must serve on all parties a docketing statement and file it with the clerk of the district court at the time of the filing of the notice of appeal or with the clerk of this court within seven days of filing the notice of appeal. The docketing statement must comply with the requirements of Circuit Rule 28(a). If there have been prior or related appellate proceedings in the case, or if the party believes that the earlier appellate proceedings are sufficiently related to the new appeal, the statement must identify these proceedings by caption and number. The statement also must describe any prior litigation in the district court that, although not appealed, (a) arises out of the same criminal conviction, or (b) has been designated by the district court as satisfying the criteria of 28 U.S.C. §1915(g). If any of the parties to the litigation appears in an official capacity, the statement must identify the current occupant of the office. The docketing statement in a collateral attack on a criminal conviction must identify the prisoner's current place of confinement and its current warden; if the prisoner has been released, the statement must describe the nature of any ongoing custody (such as supervised release) and identify the custodian. If the docketing statement is not complete and correct, the appellee must provide a complete one to the court of appeals clerk within 14 days after the date of the filing of the appellant's docketing statement.

(2) Failure to file the docketing statement within 14 days of the filing of the notice of appeal will lead to the imposition of a $100 fine on counsel. Failure to file the statement within 28 days of the filing of the notice of appeal will be treated as abandonment of the appeal, and the appeal will be dismissed. When the appeal is docketed, the court will remind the litigants of these provisions.

(d) *Counsel of Record.* The attorney whose name appears on the docketing statement or other document first filed by that party in this court will be deemed counsel of record, and a separate notice of appearance need not be filed. If the name of more than one attorney is shown, the attorney who is counsel of record must be clearly identified. (There can be only one counsel of record.) If no attorney is so identified, the court will treat the first listed as counsel of record. The court will send documents only to the counsel of record for each party, who is responsible for transmitting them to other lawyers for the same party. The docketing statement or other document must provide the post office address and telephone number of counsel of record. The names of other members of the Bar of this Court and, if desired, their post office addresses, may be added but counsel of record must be clearly identified. An attorney representing a party who will not be filing a document shall enter a separate notice of appearance as counsel of record indicating the name of the party represented. Counsel of record may not withdraw, without consent of the court, unless another counsel of record is simultaneously substituted.

NOTE:   The complete Federal Rules of Appellate Procedure & Rules of the 7th Circuit Court of Appeals are available at: http://www.ca7.uscourts.gov/Rules/Rules/rules.pdf

## THE SETTLEMENT CONFERENCE PROGRAM
## U.S. COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Pursuant to Rule 33 of the Federal Rules of Appellate Procedure[1] and Circuit Rule 33, the Court conducts conferences with counsel and clients to encourage and facilitate the settlement of civil appeals. Rule 33 conferences are conducted in all types of fully-counseled civil appeals except immigration, social security, habeas corpus, prisoners' civil rights, sentencing, and mandamus cases. The Court spontaneously notices most eligible appeals for Rule 33 conferences. Attorneys for one or more parties may also request that a conference be conducted in any eligible case.

Counsel and clients are well-advised to explore opportunities for settlement at the appellate level.Regardless of how unlikely it may seem, the fact is that many cases can be settled at this stage, substituting a certain and acceptable outcome for the risk and expense of further litigation. The Court's Settlement Conference Office has assisted counsel in settling many appeals without unduly delaying the progress of those appeals which do not yield to settlement efforts.      The following information is intended to assist practitioners and their clients in understanding how the Seventh Circuit's settlement conference program works and how they can make the best use of it to achieve favorable results.

- **How do counsel learn that a Rule 33 conference will be conducted in their appeal?**
  A Notice of Rule 33 Settlement Conference is posted on the docket. The Notice is an order of the Court advising counsel of the date and time of the conference, whether it is to be in person or by telephone, and how they and their clients are expected to prepare.

- **How can a Rule 33 conference be requested?**
  Counsel are invited to request a Rule 33 conference by contacting the Settlement Conference Office, U.S. Court of Appeals for the Seventh Circuit, 219 S. Dearborn, Room 1120, Chicago, Illinois 60604-1705 (Tel. (312) 435-6883/Fax (312) 435-6888/E-mail: settlement@ca7.uscourts.gov ). At the request of any party or parties in an eligible appeal, the Settlement Conference Office will schedule a Rule 33 conference if its calendar permits. Counsel are then advised by notice that a conference will be held.

- **Do other parties have to be informed that a conference was requested?**
  No. If a party prefers to keep its request confidential, the Settlement Conference Office will not disclose to other parties or to the Court that the conference was requested.

- **Is participation in Rule 33 conferences optional?**
  No. When a Rule 33 conference is scheduled, participation is mandatory.

- **Are clients required to attend?**
  Clients and insurance representatives are required to attend Rule 33 conferences whenever the Settlement Conference Office so directs. When clients or insurance representatives have not been directed to attend the initial conference, they must be available by phone – with full settlement authority – for the duration of the conference.

- **Is it mandatory to settle?**
  No. Whether to settle is ultimately for the parties and their counsel to decide. However, counsel and parties are required to participate with the utmost diligence and good faith. Experience shows that settlements can often be achieved when neither side thought it possible.

---

[1] FRAP Rule 33 provides: "Appeal Conferences. The Court may direct the attorneys, and in appropriate cases the parties, to participate in one or more conferences to address any matter that may aid in the disposition of the proceedings, including the simplification of the issues and the possibility of settlement. A conference may be conducted in person or by telephone and be presided over by a judge or other person designated by the court for that purpose. Before a settlement conference, attorneys must consult with their clients and obtain as much authority as feasible to settle the case. As a result of a conference, the court may enter an order controlling the course of the proceedings or implementing any settlement agreement."

- **Who conducts Rule 33 conferences?**
  The Court has delegated the responsibility for conducting Rule 33 conferences to three full-time conference attorneys: Joel N. Shapiro, Rocco J. Spagna, and Jillisa Brittan. All were civil litigators in private practice prior to their appointment by the Court.

- **Is there a fee for the services of the conference attorney?**
  No. The assistance of the Settlement Conference Office is available to appellate litigants at no charge.

- **Must each party's lead attorney attend the Rule 33 conference?**
  Yes. It is essential that each party be represented at the Rule 33 conference by an attorney who not only is conversant with the case but is the attorney on whose advice the party relies. If more than one attorney meets these criteria, either of them may represent the client in the Rule 33 conference.

- **How is it decided whether a Rule 33 conference will be conducted by telephone or in person?**
  When all participants reside in the Chicago metropolitan area, Rule 33 conferences are usually held in the Settlement Conference Office at the United States Courthouse. Otherwise, conferences are generally conducted by telephone. The telephone equipment used in these conferences can accommodate more than a dozen separate lines and enables the conference attorney to speak privately with any combination of participants. Experience indicates that telephone conferences are generally as effective as in-person conferences in fostering settlements.

- **Are in-person conferences ever held outside Chicago?**
  Because the resources of the settlement conference program are limited, in-person conferences cannot routinely be held throughout the Circuit. However, from time to time in-person conferences are conducted at locations other than Chicago. If the participants believe that an in-person conference outside Chicago would be more productive than a conference by telephone, they are welcome to suggest it.

- **Are Rule 33 conferences confidential?**
  Yes. The Court requires all participants to keep what is said in these conferences strictly confidential. Communications, oral and written, which take place in the course of Rule 33 proceedings may not be disclosed to anyone other than the litigants, their counsel, and the conference attorney.

- **Do judges of the Court of Appeals learn what has happened at a Rule 33 conference?**
  No. Participants in Rule 33 conferences, including the conference attorney, are forbidden to impart to any judge or other court personnel, in the Court of Appeals or elsewhere, what has been communicated in these conferences.

- **What occurs at a Rule 33 conference?**
  Rule 33 conferences are official proceedings of the Court but are off-the-record and relatively informal. Discussion is conversational rather than argumentative. The focus is on realistically assessing the prospects of the appeal, the risks and costs of further litigation, the interests of the parties, and the benefits each side can gain through settlement. The conference attorney ordinarily meets with counsel both together and separately. Settlement proposals are discussed. A resolution may or may not be reached during the initial conference. Often, follow-up conferences or shuttle negotiations are conducted. Letters or draft proposals may be exchanged. By the conclusion of the Rule 33 process, the parties will have either reached an agreement to settle or learned how far apart they are and what are the remaining obstacles to settlement.

- **Is discussion of settlement limited to the appeal itself?**
  Not necessarily. If settlement of the appeal will not dispose of the entire case, or if related litigation is pending in other forums, the parties are invited and encouraged to explore the possibility of a global settlement.

- **Is briefing deferred when a Notice of Rule 33 Conference is issued?**
  Briefing is usually postponed until after the initial conference. If further modification of the briefing schedule would be conducive to settlement, an order to that effect may later be entered. What preparation is required of

counsel? In preparation for the initial Rule 33 conference, attorneys are required to consult rigorously with their clients and obtain as much authority as feasible to settle the case. Counsel must also review their legal and factual contentions with a view to being able to discuss candidly the prospects of the appeal and the case as a whole. If the conference attorney requests copies of pleadings, hearing transcripts, or other material in anticipation of the conference, counsel are expected to provide it promptly.

- **What is the role of the conference attorney?**
  Because the format of Rule 33 conferences is flexible and each appeal is dealt with on its own terms, the conference attorney plays a variety of roles. He or she acts as moderator, facilitator, and intermediary. The conference attorney serves as a neutral evaluator and a reality check. He or she may suggest terms of settlement. Without being coercive, the conference attorney acts as a determined advocate for settlement.

- **What can counsel expect of the conference attorney**?
  Before the initial conference, the conference attorney will have familiarized him or herself with the history of the litigation, the posture of the case, and the issues on appeal. During the conference, the conference attorney will seek additional information about the background of the dispute and the parties' interests, claims and defenses in order to explore all possibilities for a voluntary resolution. The conference attorney is strictly impartial. He or she does not advocate for any party and avoids making comments that could advantage one side or another in arguing the issues on appeal. The conference attorney will disclose any affiliation or prior representation of which he or she is aware that could call his or her neutrality into question. The conference attorney does not force any party to settle or to accept terms it is not willing to accept. While he or she urges parties to take advantage of opportunities to settle favorably, the conference attorney recognizes that settlement is not always possible.

- **How can counsel make best use of the Rule 33 conference to benefit their clients?**
  Recognize that the Rule 33 conference is an opportunity to achieve a favorable outcome for your client. Without laying aside the advocate's responsibility, approach the conference as essentially cooperative rather than adversarial. Help your client make settlement decisions based not on overconfidence or wishful thinking, but on a realistic assessment of the case; not on emotion, however justified it may be, but on rational self-interest. Suggest terms of settlement that maximize the benefits of settlement for all parties. Take advantage of the opportunity to talk confidentially and constructively with counsel for the other parties and, if clients are present, to address them respectfully but convincingly. Let the conference attorney know how he or she can help you obtain a satisfactory resolution. Be candid. Don't posture. Listen closely to what other participants have to say. Give the process a chance to work.

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-02782-TWP-MPB |
| | ) | |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) | |
| | ) | |
| Defendant. | ) | |

---

**AMENDED NOTICE OF APPEAL**

---

Notice is hereby given that Legend's Creek Homeowners Association, Inc., Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the Entry On Defendant's Motion for Summary Judgment and Appeal of the Magistrate Judge's Decision and related Final Judgment Pursuant to Fed. R. Civ. Pro. 58, entered in this action on the sixth day of October, 2020.

Notice is hereby given that Legend's Creek Homeowners Association, Inc., Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Seventh Circuit from the Entry On Plaintiff's Motion To Amend Or Alter Judgment entered in this action on January 29, 2021.

Notice is hereby given that Legend's Creek Homeowners Association, Inc., Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Seventh

Circuit from the Amended Entry On Defendant's Motion For Summary Judgment And Appeal

Of The Magistrate Judge's Decision, entered in this action on January 29, 2021.

Respectfully submitted,

/s/ *David E. Miller*
David Miller #31855-32
Saeed & Little, LLP
133 West Market Street
Indianapolis, IN 46204
Telephone: (317) 371-5535
david@sllawfirm.com

William D. Beyers, #28466-49
BUCHANAN & BRUGGENSCHMIDT, P.C.
80 E. Cedar St.
Zionsville, Indiana  46077
Telephone:  (317) 873-8396
Facsimile:  (317) 873-2276
bbeyers@bbinlaw.com

Attorneys for Plaintiff

## <u>FEDERAL CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

/s/ *David E. Miller*
David Miller

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Case No. 1:18-cv-02782-TWP-MPB |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) ) ) |
| Defendant. | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND APPEAL OF THE MAGISTRATE JUDGE'S DECISION**

This matter is before the Court on Defendant The Travelers Indemnity Company of America's ("Travelers") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Filing No. 71.) After Travelers denied a hail and windstorm claim submitted under a condominium insurance policy, Plaintiff Legend's Creek Homeowners Association, Inc. ("Legend's Creek") brought this action alleging Travelers breached their insurance contract and acted in bad faith. (Filing No. 11.) Also pending is Travelers' Appeal of the Magistrate Judge Order ordering an appraisal. (Filing No. 83.) Because the Court **grants** Travelers' Motion for Summary Judgment, there is no need for an appraisal. Therefore, the Court **denies** Travelers' Appeal of the Magistrate Judge's Decision because that issue is moot.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, they are presented in the light most favorable to Legend's Creek as the non-moving party. *See Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.,* 477, U.S. 242, 255 (1986).

Legend's Creek is an Indiana Corporation that operates a condominium association consisting of five residential buildings, a series of detached garages, and a clubhouse located in Indianapolis, Indiana (the "Property"). (Filing No. 73-2 at 13-15.) Travelers is a Connecticut corporation that, among other things, provides insurance to residential properties. (Filing No. 73-1.) Travelers issued a condominium insurance policy (the "Policy") to Legend's Creek for coverage for the period September 1, 2015 to September 1, 2016. (Filing No. 73-3.) The Policy insured Legend's Creek against the risk of direct physical loss or damage to the Property subject to certain terms and conditions. *Id.* The Policy contained the following provision:

> No one may bring a legal action against us under this Coverage Form unless:
>
> a. There has been full compliance with all of the terms of this Coverage Form; and
> b. The Action is brought within 2 years after the date on which direct physical loss or damage occurred.

*Id.* at 44.

The Policy also contains the following limitation of liability on a replacement cost basis:

> (c) We will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs (i), (ii) or (iii) subject to Paragraph (d) below:
>
>> (i) The Limit of Insurance applicable to the lost or damaged property;
>> (ii) The cost to replace the lost or damaged property with other property:
>>
>>> a) of comparable material and quality; and
>>> b) used for the same purpose; or
>>
>> (iii) The amount actually spent that is necessary to repair or replace the lost or damaged property.

*Id*. at 40.

On or about May 1, 2016, the Property was damaged by hail and wind during a storm. (Filing No. 73-2 at 12-13.) The storm damage encompassed the roofs, gutters, and north elevations of siding on four residential buildings and four detached garages. (Filing No. 73-4 at 16-18.) At

the time of loss there were two different types of siding installed at the Property. *Id.* at 24. Buildings 1 and 2 and Garages 1 and 2 were clad with a fiber cement siding product manufactured by James Hardie known as "HardiePlank – Select Cedarmill." (Filing No. 73-5 at 34.) There is conflicting evidence in the record as to whether the siding was pre-finished, meaning it was painted in the factory and then installed, or whether it was field-finished, meaning it was primed in the factory and painted after installation. *Id.* at 53; Filing No. 73-6. For purposes of this Entry, the Court accepts Legend's Creek's position that the HardiePlank was pre-finished. At the time of the replacement, James Hardie no longer manufactured this specific siding. (Filing No. 73-10 at 1.) Buildings 3 and 4 and Garages 3 and 4 were clad with a pre-finished hardboard siding product manufactured by Masonite. (Filing No. 73-5 at 19-21; 26-27.) The Masonite siding was also discontinued. (Filing No. 80-1 at 9.)

On September 22, 2016, Legend's Creek retained a public adjuster, Kris Kassen ("Kassen") of Spartan Claims, to assist with its claim for the loss and damage caused by the May 1, 2016 storm. (Filing No. 73-4 at 14.) That same day, Kassen notified Travelers of the loss to the Property. *Id.* Spartan Claims' contract with Legend's Creek entitled it to ten percent of the insurance proceeds paid by Travelers. (Filing No. 73-9 at 1.)

On October 6, 2016, Kassen learned from a representative of James Hardie that the James Hardie siding installed on Buildings 1 and 2 and their corresponding garages was no longer in production. *Id.* at 19. On November 3, 2016, Travelers issued payment to Legend's Creek in the amount of $644,674.87, which represented the estimated cost to replace the roofs and gutters as well as to repair the damaged north elevations of siding, less the deductible and recoverable depreciation. (Filing No. 73-11; Filing No. 73-4 at 22.) This amount reflected the idea that the north facing siding would undergo spot repairs rather than complete replacement. (Filing No. 73-

4 at 36.)  Upon receipt of this initial payment, Kassen emailed Steven Knopp ("Knopp"), the adjuster handling the claim for Travelers, to tell him that his estimate "is one of the most well written and respectable estimates I've ever seen come out of Travelers, or any other carrier for that matter." (Filing No. 73-12.)

But Kassen soon changed his mind. January 20, 2017, Kassen informed Knopp that the proposed spot repairs to the damaged siding were no longer acceptable to Legend's Creek—it wanted complete replacement of the north-facing siding.  (Filing No. 73-4 at 23-24.)  On February 24, 2017, Travelers issued a supplemental payment of $238,766.88 for increased work on roof replacement, which would alleviate the need to replace the siding.  *Id.* at 26; Filing No. 73-11 at 2.  Travelers later issued another supplemental payment of $28,438.02 for increased scope of repair to the siding.  (Filing No. 73-4 at 30-31; Filing No. 73-11 at 2.)

On September 28, 2017, Kassen emailed Knopp to notify him of Legend's Creek's position that the north-facing siding needed to be replaced and spot repairs were insufficient. (Filing No. 73-13.) Travelers prepared an estimate that included replacement of the north-facing siding and sent it to Kassen. (Filing No. 73-14.) The following day, Knopp replied with his own estimate, which also called for replacement of only the north-facing siding. (Filing No. 73-15.) After discussing the difference in these estimates with Travelers' siding consultant, Kassen sent Knopp an estimate that resolved the differences. (Filing No. 73-16.) On February 7, 2018, Knopp sent Kassen a final estimate of an additional payment of $44,007.01, that reflected those revisions and provided for replacement of all north-facing siding. (Filing No. 73-17.) In his email, Knopp apologized for the delay and requested that Kassen inform him if this last estimate was "good to settle" the matter between the two parties. *Id.* at 1.

The February 7, 2018 estimate provided for replacement of the north-facing siding on Buildings 1 and 2 with primed but unfinished fiber cement product and replacement of the north-facing siding on Buildings 3 and 4 with primed and pre-finished hardboard product, and an allowance of approximately $10,000.00 to paint the unfinished siding. (Filing No. 73-11 at 2; Filing No. 73-17 at 19-24.)   On February 13, 2018, Kassen sent an e-mail to Legend's Creek's property manager, board of directors, and contractor stating:

> I am writing this email to act as directions to all parties regarding the future progress of this claim and the series of events that shall take place….
>
> At this point, I have finalized with Travelers the estimate that includes all previous items as well as the approved north elevations of siding for replacement…. I have gotten the carrier to agree to replacement of the north elevations, with the expectation that the north elevation siding at Legend's Creek will be replaced with a like kind/quality product; the closest match available. The four large buildings along with the four garages will have their north elevations of siding replaced with PreFinished, Primed James Hardie HardiePlan[k] – Select Cedarmill 8.25"…. This siding will NOT be painted thereafter as it was not painted prior to the loss. Amos will be installing the new siding, with me present to oversee production and gather evidence. I will then evaluate the argument of full replacement of all of the siding due to a gross mismatch IF there is a gross mismatch. We are expecting that there will be, however, we must have the work done prior to making that argument.
>
> There will be no warranty on this new unpainted siding, as the manufacturer's installation instructions state that product should be painted after being installed within 180 days…. This should not be alarming, as there is not currently a manufacturer's warranty on the existing siding.
>
> However, do not fret. State building code mandates that all manufacturer installation instructions should be adopted as building code. Your policy has an additional endorsement on it known as "Ordinance or Law" or "Code Upgrade." This endorsement will allow me to argue that the new siding must be painted per that manufacturer's installation instructions, in correspondence with state building code. I will not be making that argument until I have had enough time to argue full replacement of the siding after the north elevations have been replaced.
>
> Remember that this is somewhat a game of chess. Gabe and I have poised Legend's Creek to ultimately win this game. At this point, we must proceed with the moves that we have planned out several turns ahead of Travelers. If everything goes according to plan, Legend's Creek will ultimately have all new siding, which will then be painted in accordance with the manufacturer's installation instructions.

> The instructions above are how I am advising all parties involved to proceed. If there are any questions or concerns, please address them with me promptly.

(Filing No. 73-18.)

The email demonstrates that Kassen, as well as Amos Exteriors, the company that would be replacing the siding, expected the new siding to be a "gross mismatch" with the existing siding, necessitating replacement of all siding.  (Filing No. 73-4 at 51-52; Filing No. 73-8 at 50-51.)  Amos Exteriors proceeded to replace the siding on the north elevations of the four buildings and detached garages with primed unfinished HardiePlank – Select Cedarmill. (Filing No. 73-8 at 49, 56.) However, Legend's Creek did not paint the unfinished siding within 180 days of installation as recommended by the manufacturer. (Filing No. 73-2 at 69-70.)

On April 13, 2018, following the installation of the siding, Kassen emailed Knopp asserting that Travelers owed for replacement of all siding.  (Filing No. 73-20.)  In particular, the email stated:

> [i]t is my assertion that Travelers owes for replacement of the remaining elevations of siding to include the necessary trim work and painting as there is now a gross mismatch of the damage portion of the property whereas before the loss there was not. This is resulting in a diminution of property value.

*Id*. at 2.  This email was the first time Legend's Creek had requested replacement of any siding other than the north-facing siding that was damaged in the storm.  Kassen's email also stated, "[a]t this time, I would like to also request an extension of replacement cost benefits on this claim as we are quickly approaching the May 1st date of loss, and there is still reconciliation outstanding." *Id.* at 3.

On April 15, 2018, Knopp responded, "Thank you for the email and info. I will review fully upon my return to the office later this week." (Filing No. 73-21 at 2.) On April 24, 2018, Knoop wrote "[w]anted to give you an update to advise that your inquiry to the claim is still currently being reviewed." *Id*. at 1. On April 26, 2018, Kassen asked by email "[w]ill an extension

6

be granted so that we can continue to resolve this outstanding issue? I know the DoL is coming up here shortly…". *Id.* at 1.

On May 11, 2018, Knopp emailed Kassen to inform him that Travelers was preparing a supplemental payment based on the February 7, 2018 estimate, which provided for replacement of only the north-facing siding. (Filing No. 73-22.) During a telephone call on June 6, 2018, Knopp informed Kassen that Travelers had denied Legend's Creek's claim for replacement of all siding. (Filing No. 73-24; Filing No. 73-4 at 65.) On June 21, 2018, Travelers issued the final supplemental payment of $44,007.01 for replacement of the north-facing siding. (Filing No. 73-11 at 2.) Legend's Creek filed this suit on July 23, 2018 alleging breach of contract and bad faith. (Filing No. 73-25.)

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  A disputed fact must be "material," which means that it might affect the outcome of the case under the applicable substantive law. *Liberty Lobby*, 477 U.S. at 248.  Disputes over irrelevant or unnecessary facts do not preclude summary judgment.  *Id.* A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249.

7

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

### III.     DISCUSSION

Regarding Count I:  Breach of Contract, Travelers argues summary judgment is appropriate because Legend's Creek's claims are barred by the two-year Suit Limitation Provision in the Policy. Regarding Count II:  Bad Faith, Travelers argues that it handled Legend's Creek's claim in good faith, and Legend's Creek lacks evidence to the contrary.  Because it is dispositive, the Court begins its analysis with breach of contract claim.

### A.     Count I:  Breach of Contract

Legend's Creek  argues that because Travelers did not pay for the replacement of the other three sides of the siding and did not pay to properly repair the north facing siding, it breached the Policy.  The Policy states that no one may bring legal action against Travelers unless that action is brought within two years of the date of loss. (Filing No. 73-3 at 44.)  It is undisputed that the date of loss in this case is May 1, 2016, and Legend's Creek did not commence this action until July 23,

2018—more than two years after the date of loss.  Travelers argues this delay entitles it to summary judgment.  Legend's Creek's defense to this argument is two-fold, they argue that Travelers waived the two-year period as a matter of law, or a factual dispute exists regarding waiver. (Filing No. 79 at 16.)

Legend's Creek specifically argues (1) that public policy supports waiver rather than forfeiture, (2) that Travelers had a duty to notify Legend's Creek of its intent to strictly enforce the limitation period, and (3) that Travelers implicitly waived its right to enforce the limitation provision by continuing to negotiate and investigate the claim beyond the two-year period. Alternatively, Legend's Creek contends that it substantially complied with the limitation provision, and this particular provision of the contract is ambiguous.  Legend's Creek also maintains that Travelers waived its right to enforce the suit limitation provision in the Policy.  Its argument breaks down into three parts, which the Court will discuss separately.

### 1.    **Public Policy**

Legend's Creek argues that finding waiver here comports with public policy in Indiana. Suit limitation clauses in insurance contracts are unquestionably legal in Indiana.  *Schafer v. Buckeye Union Ins. Co.*, 381 N.E.2d 519, 522 (Ind. Ct. App. 1978) ("It is well established in Indiana that, while not favored, … contractual limitations shortening the time to commence suit are valid, at least so long as reasonable time is afforded.").  Legend's Creek notes that Indiana courts disfavor these provisions because (1) they contravene statutes of limitation set by the legislature, (2) there is a societal interest in support of commercial insurance of loss, and (3) a limitation period might cause a party to waste resources by bringing suit only to preserve its contractual right to do so, although litigation may ultimately be unnecessary.  (Filing No. 79 at 16-17, (citing *Schafer*).)

The Court accepts these public policy considerations as relevant to the rules of waiver in Indiana but does not consider them to be determinative of individual disputes. In other words, these policy considerations may have been the rationale for development of a waiver rule that is especially generous to policy holders, but the Court must still evaluate whether a Defendant has waived its right to enforce a suit limitation provision under that rule. The Court addresses that question as to the specific facts of this case in Section III.A.3 of this Entry.

### 2. __Duty to Notify__

Legend's Creek argues that "Travelers had a duty to speak if it was going to strictly enforce the two-year limitation." (Filing No. 79 at 19.) It cites the following maxim of Indiana law:

> [I]t is the duty of the insurers, pending the consideration of the proofs of loss, to bear themselves with all good faith towards the claimant, and if they are satisfied with the proof furnished, and have, or have not, the right to demand further proof before their liability becomes fixed, they ought to make known to the assured the fact and nature of these demands without unnecessary delay.

*Huff v. Travelers Indem. Co.*, 363 N.E.2d 985, 991-92 (Ind. 1977) (quoting *Aetna Ins. Co. v. Shreyer*, 85 Ind. 362, 366-67 (Ind. 1882)). Legend's Creek interprets this statement of law as a duty requiring an insurer to notify the insured that it intends to enforce the suit limitation provision, but the Court does not see it that way. A clearer recitation of Indiana's standard can be found in the paragraph preceding that quote. "[T]he inquiry is whether anything has been done in the relationship between the insurer and the insured which would cause the insured to reasonably believe the limitation period will not be insisted upon." *Huff* at 991. The Court views this second quotation as the more definitive recitation of Indiana's standard due to its prevalence in the caselaw that has followed *Huff*. *See, e.g., Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 415 (Ind. Ct. App. 1999) (quoting *Wingenroth v. American States Ins. Co.*, 455 N.E.2d 968, 970 (Ind. Ct. App. 1983)).

10

The Court determines that Indiana law does not impose an affirmative duty on an insurer to notify its insured of its intent to enforce the suit limitation provision. Instead, the question is whether a reasonable insured would have the impression that the insurer *does not* intend to enforce the provision. The Court addresses that question in the next subsection.

### 3. <u>Implicit Waiver by Continued Negotiation and Investigation</u>

Suit limitation provisions in insurance contracts may be waived either expressly or impliedly. *Summers*, 719 N.E.2d at 414. "A waiver or estoppel may result from acts of insurer causing insured or claimant under the policy to delay bringing suit until after the time provided for in the policy." *Id.* at 414-15 (quoting *Huff*) (internal quotations omitted). Contractual limitation periods may be waived if an insurer's conduct is sufficient to create a reasonable belief on the part of the insured that strict compliance with the policy provision will not be required. *Id.* (quoting *Wingenroth*, 455 N.E.2d at 970. Thus, the focus of the court's inquiry is whether the insurer has done anything that would cause the insured to reasonably believe the limitation provision will not be enforced.

Legend's Creek argues there are communications between the parties that show Travelers did not intend to enforce the two-year limitation period for bringing suit. First, after Legend's Creek notified Travelers of the loss on September 22, 2016, the parties "consistently and frequently discussed settling" the claim. (Filing No. 79 at 22.) Second, Legend's Creek states that "[o]n April 13, 2018, Kassen brought to Travelers' attention the gross mismatch between the siding and requested replacement for the other three sides and an extension past the two-years." *Id.* Travelers responded, several times informing Kassen that it was reviewing his request but not addressing his query about the two-year period. Third, Travelers continued to act on the claim past the May 1, 2018 date on which the two-year window to file suit expired. On that day, Travelers agreed to

11

release additional funds related to repair and replacement of siding, then twice during May indicated it was still considering Legend's Creek's request to replace all siding, only to deny that request on June 6, 2018.  On June 21, 2018, Travelers paid more to Legend's Creek for the replacement of the north-facing siding.

The posture of this case entitles Legend's Creek to have all factual inferences drawn in its favor.  But the Court does not ignore facts that are inconvenient to the non-movant nor does it accept the non-movant's assertions if they are not supported by evidence in the record.  With that in mind, the Court finds it necessary to correct Legend's Creek's narrative so that it conforms with the record evidence.

First, Legend's Creek contends that Kassen twice asked Travelers' representative for an extension of the two-year suit limitation period and was ignored on both occasions. The record shows that is not the case.  On April 13, 2018, when Kassen first informed Knopp that he believed Travelers must pay for the replacement of all siding on the damaged buildings, he also "request[ed] an extension of replacement cost benefits on this claim as we are quickly approaching the May 1st date of loss". (Filing No. 73-20 at 3.)  He did not mention filing suit or the suit limitation provision of the Policy.  On April 26, 2018, Kassen asked if "an extension [will] be granted so that we can continue to resolve this outstanding issue?" (Filing No. 73-21 at 1.)  Again, the discussion is regarding the claim only, and he did not mention filing suit or the suit limitation provision.

Perhaps if this were the only evidence in the record about these requests, Legend's Creek would be entitled to an inference that it requested an extension of the suit limitation period and Travelers ignored that request.  But other evidence, specifically Kassen's deposition testimony, indicates that his request did not refer to the suit limitation provision.

Q Okay. And what is the – what are you asking for an extension of?

12

A I became aware later that Travelers does not have, at least to my understanding, a date at which – or a point at which after the loss occurs that they will cut off replacement cost benefits, in other words, recoverable depreciation. And so I had just assumed that that may – that may be a provision of the policy.

Q Okay. So you were requesting an extension of time to claim replacement cost benefits because, at that point in time, you assumed that there was a deadline for that?

A Correct.

Q Okay. Were you requesting an extension of anything else in that e-mail?

A Specifically on April 26?

Q Yes. I'm just referring to the e-mail itself.

A I don't believe so.

(Filing No. 73-4 at 62-63.) Given Kassen's admission that he was not referring to the suit limitation provision, no reasonable juror could find that Legend's Creek made a request for an extension of the suit limitation period and Travelers ignored that request.

Second, Travelers mischaracterizes the claims process as "continued negotiations … leading up to and after the two-year anniversary of the date of loss." (Filing No. 79 at 23.) This characterization ignores the specifics of the parties' discussions, which, until April 13, 2018, only involved repair or replacement of the north-facing siding that was damaged in the storm. Kassen testified in his deposition that prior to sending the email on April 13, 2018, he had never requested that Traveler's pay for anything more than replacement on the north elevation of siding (Filing No. 73-4 at 61.) Travelers approved Legend's Creeks' claim as to the north-facing siding, and while the very last of that money was paid out after the two-year suit limitation period had expired, none of that money is at issue in this case. The breach Legend's Creek alleges is based on Travelers' refusal to pay for replacement of the siding on the other faces of its buildings. Again, this siding was not

damaged in the storm nor did Legend's Creek claim it needed replacement until April 13, 2018—102 weeks into the 104-week suit limitation period.

Moreover, evidence in the record indicates Legend's Creek knew it expected to make a claim for replacement of all siding at least a month before it informed Travelers of that expectation. In an email to Legend's Creek's principals on February 13, 2013, Kassen wrote that he intended to evaluate whether Legend's Creek could make a claim for replacement of all siding based on a "gross mismatch" between the new north-facing siding and the rest of the siding. He said that he expected there would be a gross mismatch but did not report that expectation to Travelers until a month later. (Filing No. 73-18.) Based on that chicanery, it is disingenuous to assert that Travelers dragged its feet by continuing to investigate the claim beyond the suit limitation period.

The record shows that Legend's Creek essentially made a new claim two weeks prior to the two-year limitation date. Prior to that point, it had only requested replacement of the north-facing siding that was damaged in the storm. Requesting replacement of *all* siding is not a "negotiation," as Legend's Creek frames it, but a new claim. It does not stem from the same date of loss, as no parties contend any siding but that facing north was damaged in the storm on May 1, 2016. And it does not involve the same portion of the covered property. The parties engaged in no negotiations on this claim to replace all the siding. Legend's Creek made the claim and Travelers denied it. That is not a negotiation.

The point of the claims process is to enforce the Policy the two parties agreed to. In other words, after damage or loss occurs, the two parties look to the contract to determine what each party is entitled to and responsible for. The Court is persuaded by Travelers argument that the record shows Legend's Creek's agent, Kassen, viewed the claims process as a "game" in which the goal was to out strategize an opponent and gain an advantage. In this game, he inverted the claims

process, first determining a desired result (for Legend's Creek to "ultimately have all new siding") and then devising a plan to achieve that result through the claims process.

That is the version of the facts supported by the record.  It does not include any action on the part of Travelers that would give Legend's Creek a reasonable impression that Travelers did not intend to enforce the suit limitation provision of the Policy.  Nor is there evidence that Travelers' actions caused Legend's Creek to delay filing suit.  Thus, Travelers has not waived its right to rely on Legend's Creek's noncompliance with that provision.

Legend's Creek cites to *Huff*, in which the Indiana Supreme Court found that an insurer waived the suit limitation provision and continued to exchange letters regarding the claim through and beyond the limitation period.  363 N.E.2d at 992.  But *Huff* is distinguishable because in *Huff* the parties were discussing the same claim up until and through the expiration of the suit limitation period.  Here, Legend's Creek sprung a new claim on Travelers two weeks before expiration of the suit limitation period and now attempts to use that late claim to escape its bargained-for obligation to file suit within two years of loss if it files suit at all.

Legend's Creek also relies on *Schafer*, explaining that the parties in that case were engaged in active negotiations when the limitation period lapsed.  But Legend's Creek and Travelers were not actively negotiating in April and May of 2018.  The insureds in *Schafer*, after giving notice, submitting proof of loss, and providing examinations under oath, offered a compromise settlement of their fire damage claim, provided counter-offers and then made another settlement proposal before the suit limitation  period expired.  *Schafer* at 520.  Here, Travelers had approved and was in the process of paying out Legend's Creek's claim for replacement of the north-facing siding.  Meanwhile, Legend's Creek filed a claim for replacement of all siding, which Travelers later denied.  Legend's Creek's rhetorical tactic is to call its gamesmanship and the late filing of a new

15

claim "negotiating" and then compare its facts to cases in which the parties were actively negotiating.  But no negotiation was underway in this case at the end of the limitation period no matter how many times Legend's Creek insists it was.

For those reasons, Travelers has not waived its right to enforce the two-year suit limitation provision of the Policy.  Because Legend's Creek did not comply with that provision, Travelers is entitled to judgment as a matter of law.

### 4.  <u>Substantial Compliance</u>

Alternatively, Legend's Creek argues Travelers' Motion for Summary Judgment should be denied because Legend's Creek substantially complied with the suit limitation provision.  It cites one case in support of this argument, *Cont'l Ins. Co. v. Thornburg*, 219 N.E.2d 450 (Ind. Ct. App. 1966).  In that case, the Indiana Court of Appeals found that an insurer had waived the contractual suit limitation period because the insured relied upon a letter from the insurer asking for an in-person meeting.  *Id.* at 454.  The court determined under principles of equity that the suit limitation period was at least suspended between the day the insured received the letter and the day the meeting took place.  That suspension meant that the insured had ultimately filed suit within the limitation period.  The case does not discuss a substantial compliance exception to a contraction suit limitation provision.

Even if *Continental* can be read to create an exception for substantial compliance, the Court would not apply it here.  The principles of equity do not aid Legend's Creek in this circumstance, as the evidence shows it was the party attempting to game the claims adjustment process and that it was Legend's Creek that dragged its feet in asking for replacement of all siding.  It would contravene equitable principles to allow an insured to circumvent a suit limitation provision by filing a new claim at the eleventh hour that the insurer must evaluate.

16

**5.      Ambiguity**

Last, Legend's Creek argues that the suit limitation provision is ambiguous.  "The Policy is ambiguous whether the insured must file suit within two years of date of loss where the claim is still under review at the two-year deadline". (Filing No. 79 at 31.) Legend's Creek  argues that the Policy provision is self-contradictory because in certain cases it would not be possible to comply with both provisions.  Again, the provision reads:

No one may bring a legal action against us under this Coverage Form unless:

a.  There has been full compliance with all of the terms of this Coverage Form; and
b.  The action is brought within 2 years after the date on which direct physical loss or damage occurred.

Filing No. 73-3 at 44.  Legend's Creek argues that for cases where the investigation of the claim takes more than two years from the date of loss, an insured cannot both comply with all the terms of the coverage form and file suit within two years.

The Court disagrees.  An insured can comply with the coverage form by cooperating in the investigation and allowing the insurer to inspect the property and still file suit within two years if necessary.  Indeed, if Legend's Creek had filed suit before May 1, 2018, it would have complied with both provisions, as no evidence showed it failed to comply with the terms of the Coverage Form.  The provision is similar to one considered in *Royer v. USAA Cas. Ins. Co.*, 781 F.Supp.2d 767, 770 (N.D. Ind. 2011).  The suit limitation provision in that case read:

**7. Suits Against Us.** No action can be brought against us unless you have:

a. given us notice of the loss,

b. complied with all other provisions, and

c. started the action within one year after the date of the loss.

17

Like the provision at issue here, that provision requires the insured to both comply with other provisions of the policy and file suit within a certain time frame of the date of loss.  The *Royer* court found that provision to be unambiguous, and this Court agrees.  There is nothing inherently contradictory about a provision that requires the insured to comply with the policy and to file suit within a certain time frame.

### B.     Bad Faith

To prove bad faith, Legend's Creek must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability.  *Villas at Winding Ridge v. State Farm Fire & Cas. Co*., 942 F.3d 824, 833 (7th Cir. 2019).  Legend's Creek must also prove Travelers' "conscious wrongdoing" or "culpable mental state". Summary judgment on a bad faith claim is required when the insured presents no evidence or facts that the insurer acted with a culpable state of mind, or where the undisputed facts demonstrate that an insurer "had a rational and principled basis for denying coverage".  *Thompson Hardwoods, Inc. v. Transportation Ins. Co*., 2002 WL 440222, at *5 (S.D. Ind. Mar. 15, 2002); *Masonic Temple Association of Crawfordsville v. Indiana Farmers Mut. Ins. Co*., 779 N.E.2d 21 (Ind. Ct. App. 2002) (affirming partial summary judgment in favor of insurer on insured's bad faith claim where facts demonstrated insured had a "rational, principled basis" for denying liability).

Travelers argues that Legend's Creek "cannot come close to meeting its heavy burden of establishing, by clear and convincing evidence, that Travelers knew that there was no legitimate basis for denying liability for replacement of all of the siding at the Property."  (Filing No. 82 at 11.)  Travelers contends Legend's Creek has presented no evidence that shows it acted with the requisite culpable state of mind.

18

Legend's Creek does not dispute that Travelers had a legitimate basis for denying liability for replacement of the east, west, and south elevations of undamaged siding. Instead, Legend's Creek argues that Travelers consistently made unfounded delays in processing the claim. (Filing No. 79 at 34.) The Court is unpersuaded by Legend's Creek's argument. The designated evidence is replete with examples of the parties good faith negotiations during the periods of time that Legend's Creek now contends were unfounded delays. *See* (Filing No. 79 at 18, 22, 24.) A good faith dispute about the amount of a valid claim does not supply the grounds for a bad faith claim. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993). Poor judgment, negligence, and lack of a diligent investigation are likewise insufficient to establish bad faith. *State Farm Mut. Auto. Ins. Co. v. Gutierrez*, 844 N.E.2d 572, 580 (Ind. Ct. App. 2006). Contrary to Legend's Creek's contentions, the designated evidence shows that Travelers had a rational and principled basis for its actions. As noted in the background section of this Entry, Kassen admitted as much in his deposition testimony.

More importantly, Travelers cannot be liable for bad faith in the absence of a contractual breach. In Indiana, claims made against insurers for breach of the duty of good faith, while sounding in tort, are nonetheless subject to contractually agreed upon limitations provisions if brought by the insured. *Troxell v. Am. States Ins. Co.,* 596 N.E.2d 921, 925 (Ind. Ct. App. 1992) (suit limitation provision barred bad faith claim). Because the Court has determined there was no breach of contract, Travelers is entitled to summary judgment on the bad faith claim as well.

## IV.   CONCLUSION

The Court holds that Legend's Creek failed to comply with the suit limitation provision of the Policy. Legend's Creek was represented by a public adjuster, consulted with counsel during the claim process, had a copy of the policy and was aware that it had two years from the date of

19

loss to commence legal action, yet never requested an extension of time to file suit and failed to file suit within the time frame required in the contract. Accordingly, it has no right to relief under that contract. Therefore, Travelers' Motion for Summary Judgment, (Filing No. 71), is **GRANTED** as to Legend's Creek's claims for breach of contract and bad faith.  As that ruling resolves this suit, there is no need to continue the process of appraisal. Accordingly, Travelers' Appeal of the Magistrate Judge's Order, (Filing No. 83), is also **GRANTED**.  The Court will issue final judgment in a separate order.

      **SO ORDERED.**

Date:  10/6/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

William David Beyers
BUCHANAN & BRUGGENSCHMIDT, P.C.
bbeyers@bbinlaw.com

David E. Miller
SAEED & LITTLE LLP
david@sllawfirm.com

Matthew P. Fortin
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
mfortin@fgppr.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

Matthew S. Ponzi
FORAN GLENNON PALANDECH & PONZI, PC
mponzi@fgppr.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 1:18-cv-02782-TWP-MPB |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) ) |
| Defendant. | ) ) |

## FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58

The Court having this day made its Entry directing the entry of final judgment, the Court now enters **FINAL JUDGMENT**.

For the reasons detailed in the Court's Entry on Pending Motions, the Court now enters **FINAL JUDGMENT** in this action in favor of Defendant Travelers Indemnity Company on Plaintiffs' claims for breach of contract and bad faith.

Therefore, Plaintiff Legend's Creek Homeowners Association, Inc. shall take nothing by its Complaint. Judgment is entered accordingly, and this cause is **TERMINATED**.

Dated: 10/6/2020

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Roger A.G. Sharpe, Clerk of Court

By: _____
        Deputy Clerk

Distribution:

William David Beyers
BUCHANAN & BRUGGENSCHMIDT, P.C.
bbeyers@bbinlaw.com

Matthew P. Fortin
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
mfortin@fgppr.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

David E. Miller
SAEED & LITTLE LLP
david@sllawfirm.com

Matthew S. Ponzi
FORAN GLENNON PALANDECH & PONZI, PC
mponzi@fgppr.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LEGEND'S CREEK HOMEOWNERS            )
ASSOCIATION, INC.,                   )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )      Case No. 1:18-cv-02782-TWP-MPB
                                     )
THE TRAVELERS INDEMNITY COMPANY      )
OF AMERICA,                          )
                                     )
                    Defendant.       )

## ENTRY ON PLAINTIFF'S MOTION TO AMEND OR ALTER JUDGMENT

This matter is before the Court on a Motion to Amend or Alter Judgment filed by Plaintiff Legend's Creek Homeowners Association, Inc. ("Legend's Creek"), pursuant to Federal Rule of Civil Procedure 59(e) (Filing No. 90).  In support of the Motion, Legend's Creek filed a Memorandum in Support of Motion to Reconsider Entry on Defendant's Motion for Summary Judgment and Final Judgment [Dkts. 86 and 87] in which it contends that the Court erred in several respects in its summary judgment entry (*see* Filing No. 91).  For the following reasons, the Court **denies** the Motion to Reconsider.

## I.  BACKGROUND

After an insurance coverage dispute, Legend's Creek sued its insurer Defendant Travelers Indemnity Company of America ("Travelers") for breach of contract and bad faith (*see* Filing No. 35 at 3–5).  Specifically, Legend's Creek contended that it was owed replacement siding for the entirety of several buildings it owned—despite only one side on each of the buildings suffering damage—so that it "would have [ ] matching siding" when the existing siding had been

discontinued. *Id.* at 3.  Moreover, Legend's Creek contended that Travelers acted in bad faith when it "knew that the siding was discontinued and could not be matched." *Id.* at 4.

In April 2020, at the behest of Legend's Creek, (*see* Filing No. 58), the Court ordered the parties "to commence the appraisal process as outlined in the Policy." (Filing No. 81 at 6.)  The Court specifically noted, however, "that the appraisal can be used after the filing of the complaint as part of the discovery process" and that it "could help in the fact-finding, and hopefully settlement discussions, while preserving any legal arguments, coverage or otherwise, that Travelers believes precludes its liability." *Id.* at 3, 4.  In other words, the Court clarified, this conclusion "regarding the appraisal has no outcome on" any analysis concerning "Travelers' pending summary judgment [arguing] that Legend's breach of contract count is barred by the Policy's two-year statute of limitation for a legal action." *Id.* at 5.  The Court further noted that "[t]o conclude that Legend's may exercise its contractual appraisal right is not to endorse its theory of its entitlement to a larger recovery; nor does it preemptively endorse the appraiser's fact-finding as binding notwithstanding any legal defenses Travelers may assert." *Id.* at 6.  This later-completed appraisal determined that Travelers owed "$257,256.47 for the additional actual cash value owed for covered damage". (Filing No. 90-1 at 1; *see also* Filing No. 90-2 at 1–6.)  Travelers issued payment on October 1, 2020, for this amount (*see* Filing No. 90-3).  But a few days later, on October 6, 2020,  the Court— as eluded to above as a possibility—entered summary judgment in favor of Travelers for the failure of Legend's Creek to file suit within the two-year limitation provision of the controlling insurance policy (Filing No. 86 at 19–20).  That afternoon, Travelers stopped payment on its October 1, 2020 check (*see* Filing No. 90-8).  On November 3, 2020 Legend's Creek filed the instant Motion seeking reconsideration of the summary judgment ruling.

## II.   <u>LEGAL STANDARD</u>

Although motions to reconsider are not specifically authorized by the Federal Rules of Civil Procedure, courts in the Seventh Circuit apply Rule 59(e) or Rule 60(b) standards to these motions.  *Smith v. Utah Valley Univ.*, 2015 U.S. Dist. LEXIS 70271, at *3–4 (S.D. Ind. June 1, 2015).  A motion to alter or amend under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  If timely filed, a motion styled as a motion to reconsider should be considered under Rule 59(e).  *Kiswani v. Phoenix Sec. Agency, Inc.*, 584 F.3d 741, 742 (7th Cir. 2009).  Because Legend's Creek filed its "Motion to Reconsider" precisely twenty-eight days after the Court issued its Order, the Court will analyze the Motion as a motion to alter or amend under Rule 59(e).

The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the Court to reconsider matters "properly encompassed in a decision on the merits."  *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989).  "A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment."  *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case."  *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).  A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence."  *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010).  A manifest error "is not demonstrated by the disappointment of the losing party.  It is the wholesale disregard, misapplication, or failure to recognize controlling precedent."  *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted). Furthermore, "a Rule 59(e) motion is not an

opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, at *7 (S.D. Ind. Mar. 24, 2009).

### III.  DISCUSSION

Legend's Creek purports that reconsideration is warranted for five reasons.  Each is discussed, in turn, below.

### A.    Appraisal Award

First, Legend's Creek asserts that "[n]ow that the appraisal award has been finalized," the Court should reevaluate "certain factual determinations that equity did not support waiver of the two-year" limitations period (Filing No. 91 at 2 (citations omitted)).  This later award "shows that Legend's [Creek] was not making a fraudulent claim or otherwise seeking to game the system," and that "Travelers owed this money from the start." *Id.*  Indeed, Legend's Creek urges that the "Court should consider the appraisal award as new evidence supporting that Legend's Creek's position was correct all along and rebutting the inference of gamesmanship made by Travelers." *Id.* at 4.  To Legend's Creek, "[t]he appraisal award plainly reflects that there was one claim, and that the other three sides of the siding clearly needed to be replaced." *Id.* at 5.  "[B]ecause the Court made a factual finding that Legend's [Creek's] request to replace the other three sides of the affected buildings was a 'new claim' made at the 11th hour," the Court should reconsider given this "clear-cut appraisal." *Id.* (citations omitted).  Moreover, the award rebalances the equities the Court previously considered, Legend's Creek contends, when "[t]he appraisal award shows that Travelers plainly misadjusted this claim the entire time." *Id.* Simply put, "if Travelers would have had a competent and responsive adjuster adjusting the claim," the siding issue could have been resolved before the two-year limitation deadline. *Id.* at 5–6.

In response, Travelers asserts that the "Appraisal Award has nothing to do with the Court's Order and should not be considered new evidence." (Filing No. 102 at 3.)  Traveler's contends "the appraisal process was time barred and should never have been demanded by Legend's Creek fifteen (15) months into litigation and 459 days after the suit limitation period expired" and "should never have been permitted to proceed." *Id.* The Court identified this, Travelers argues, when it "recognize[d] that *both* the complaint *and* the appraisal process were untimely" and ordered "the process to stop." *Id.* at 4 (emphasis in original).  The appraisal, then, cannot serve as "new evidence." *Id.*  Concerning Legend's Creek's assertion "that Travelers breached the contract by not paying what the appraisers allegedly found during their inspection of the property," the disparity between the initial estimate and later appraisal award is merely "evidence that the parties disagreed over the amount of loss." *Id.*  Travelers argues that "appraisal does not have the same rigorous rules and discovery process as federal court litigation," rendering any determination "not evidence of the merits of either party's litigation position". *Id.* Additionally, the argument that the issue could have been resolved before the limitations period expired rings hollow when the public adjuster for Legend's Creek "intentionally sat on this siding issue from February 13, 2018, through April 13, 2018, as part of the 'chess game'". *Id.* at 5.  And this adjuster too must have been "incompetent" when "Travelers was issuing payments based on" his estimates. *Id.*  Finally, whether the demand for replacement of the entirety of the buildings' siding "is considered a new claim or part of the original claim does not change the fact that there is no evidence that Legend's Creek requested an extension of the suit limitation period." *Id.* at 6.

In reply, Legend's Creek argues that "the appraisal award is binding on Travelers. Its own policy makes it binding, as does an Order of this Court sending the parties to appraisal." (Filing No. 103 at 1.)  And the Court, Legend's Creek contends, "did not recognize the appraisal process

as 'untimely;' it rather ordered the appraisal process to cease." *Id.* at 2.   Importantly, argues Legend's Creek, "[t]he appraisal award is a critical piece of evidence that came to light after the parties had already briefed this Court on summary judgment." *Id.*  This increased amount serves as "critical evidence that Travelers plainly underpaid this claim." *Id.*

The Court finds that the outcome of the appraisal does not alter the issue it is asked to reconsider—that is, whether equity supported waiver of the two-year limitation period by Travelers.  Despite this new appraisal award, Travelers did nothing that would give Legend's Creek a reasonable impression that Travelers did not intend to enforce the suit limitation provision of the Policy.  Legend's Creek argues that the appraisal award rebuts any inference of gamesmanship on its part (*see* Filing No. 91 at 4).  But never has a term befitted a scenario better:  the public adjuster for Legend's Creek literally stated that waiting for the anticipated gross mismatch upon installation (to then demand a full re-cladding of the buildings) was all part of the "game of chess" he was playing with Travelers (Filing No. 73-18).  Indeed, the public adjuster believed he had "poised Legend's Creek to ultimately win this game," advising that Legend's Creek "must proceed with the moves that we have planned out several turns ahead of Travelers." *Id.*  Considering these forthright statements, it is bold for Legend's Creek to now claim—even in light of any difference between an appraisal and earlier payments—that it was then not "seeking to game the system."  (Filing No. 91 at 2.)  Any monetary disparity does not go to the issue of whether Travelers acted in a way that it intended to relinquish the limitation provision; instead, as Travelers argued, any difference simply demonstrates "that the parties disagreed over the amount of loss." (Filing No. 102 at 4.) There is no need to reconsider the Court's Entry based on this appraisal award amount.

**B.**     **Counsel for Legend's Creek**

Second, Legend's Creek argues—contrary to a statement in the Court's summary judgment

entry—that it "was not represented by counsel until after the two-year period had already expired."

(Filing No. 91 at 6.)  To Legend's Creek, the Court's finding that it "'consulted with counsel during

the claim process' . . . is unsupported by the factual record and constitutes a manifest error of fact."

*Id.* at 6 (quoting Filing No. 86 at 19).  While it did receive legal advice "regarding painting of the

property," Legend's Creek asserts that it "'was not represented by counsel until after the limitation

period lapsed.'" *Id.* (quoting Filing No. 79 at 10).  "This erroneous factual finding is worth

reconsideration," Legend's Creek argues, "because it contributed to this Court's conclusion that

Legend's failed to timely file suit."  *Id.* at 7.

In response, Travelers argues that "the record supports the assertion" that Legend's Creek

consulted with counsel before the limitation period ran (Filing No. 102 at 6 (citing Filing No. 73-

2 at 69–70 (noting that "counsel" advised Legend's Creek not to paint the newly installed siding))).

Moreover, this fact does not constitute "new evidence" because it was available while the summary

judgment was pending.  *Id.*  And most significantly, engagement with counsel is "irrelevant" when

the briefing and ultimate entry did not "turn[ ] on whether the policyholder was represented by

counsel prior to filing suit."  *Id.* All told, "the legal representation issue is a red herring":  the public

adjuster for Legend's Creek had been working with it since September 22, 2016, and was "required

by law to be familiar with insurance policies."  *Id.* at 7 (citations omitted).  "Whether counsel was

advising Legend's Creek prior to suit or not," Travelers concludes, "the evidence is clear that

Legend's Creek is solely responsible for its failure to timely file suit or demand appraisal."  *Id.* at

8.

In reply, Legend's Creek redoubles that "deposition testimony does not, when construed in the light most favorable to Legend's, indicate that Legend's [Creek] consulted with legal counsel during the claim process." (Filing No. 103 at 2.)  The fact that present counsel for Legend's Creek "signed their names" to the brief opposing summary judgment arguing that Legend's Creek had not been in consultation with counsel at the time alone "should have been sufficient to rebut" the contention. *Id.* "[R]econsideration of this factual mistake" is necessary, Legend's Creek concludes, "because it contributed to the Court's conclusion that Legend's failed to timely file suit." *Id.* at 3.

The Court did not discuss at length any consultation between Legend's Creek and counsel before the suit limitation period ran:

> Legend's Creek was represented by a public adjuster, *consulted with counsel during the claim process*, had a copy of the policy and was aware that it had two years from the date of loss to commence legal action, yet never requested an extension of time to file suit and failed to file suit within the time frame required in the contract.

(Filing No. 86 at 19–20 (emphasis added).)  This brief clause in the Entry's conclusion section is all the Court penned about Legend's Creek and counsel.  Nowhere does the Entry place any weight on this detail.  *Cf. id.* at 11–16 (discussing actions of *public adjuster* at length).  Instead, this passing statement merely indicates that Legend's Creek consulted about the siding with its attorney—not that it received guidance on how to proceed with its claims.  In short, this fact did not contribute to the Court's decision, let alone drive the result through manifest error.  Instead, as Travelers notes, "[n]one of the law addressed in the Summary Judgment Order or the briefing turns on whether the policyholder was represented by counsel prior to filing suit." (Filing No. 102 at 6.)

Moreover, contrary to the argument of Legend's Creek, the record supports the Court's statement—Legend's Creek consulted with its attorney at the time it was engaged in the claims process (*see* Filing No. 73-2 at 69–70). Although Legend's Creek asserts that "[t]he deposition testimony never referenced any time period as to when" counsel advised Legend's Creek to forego

8

painting the siding, (Filing No. 91 at 6), the root question inquired as to whether the "siding [was] painted *within 180 days of being installed*." (Filing No. 73-2 at 69 (emphasis added).) As the siding was installed around March 12, 2018, (*see* Filing No. 73-4 at 54–56 (confirming that an email sent on that date "would have been around the time, either during or right after they were finishing up replacing the north elevations of siding")), any consultation with an attorney about whether to paint the newly-installed siding would have assuredly occurred within the period when the parties were discussing the claim. Regardless, because any attorney consultation did not go toward the Court's decision—and the record supports the Court's statement—the Court finds no reason to, as Legend's Creek requests, "reconsider and reverse its ruling" based on the Entry's cursory remark.

## C.    **Duty of Insurer to Inform**

Third, Legend's Creek argues that "Indiana law unequivocally requires an insurer to inform the insured if it will enforce a suit limitation period." (Filing No. 91 at 7.) Specifically, Legend's Creek takes issue with the Entry's statement that Legend's Creek "'essentially made a new claim two weeks prior to the two-year limitation date.'" *Id.* (quoting Filing No. 86 at 14). Instead, Legend's Creek contends, "the appraisal award makes clear that this was not a new claim" and instead "was encompassed within the existing claim from May 1, 2016." *Id.* "[I]f Travelers[] would have competently adjusted the claim initially," Legend's Creek argues, it "would never have been in this position." *Id.* at 9. This purportedly deliberate sluggishness allowed Travelers "'to lull an insured into not pressing his rights and to then deny liability on the basis of the limitation period.'" *Id.* (quoting *Huff v. Travelers Indem. Co.*, 363 N.E.2d 985, 992 (Ind. 1977)). Legend's Creek points to an Indiana Court of Appeals case instructing that an insurer cannot "'maintain[ ] that the time specified in the limitation provision continued to run'" after "'requesting [the insured]

to refrain from filing suit while the company's adjuster reviewed the claim.'" *Id.* at 9–10 (quoting *Continental Ins. Co. v. Thornburg*, 219 N.E.2d 450, 454 (Ind. Ct. App. 1966).  This surely, Legend's Creek maintains, "imposes a requirement on insurers to explicitly invoke the suit limitation provision if they intend to enforce it." *Id.* at 10.  Legend's Creek surmises, because "this was not a new claim" and Travelers has been rewarded for "its failures in terms of not promptly responding and not correctly adjusting the claim from the beginning," the Court should reconsider its ruling. *Id.*

In response, Travelers argues that it "is not required to inform [Legend's Creek] of the suit limitation provision under the circumstances."  ([Filing No. 102 at 8](#).)  Noting that Legend's Creek "again trots out previously rejected arguments," Travelers maintains that under Indiana caselaw, an insurer need not "inform an insured that it will enforce the suit limitation provision.[1] *Id.* Moreover, *Huff* is inapplicable when there "the insured gave notice of the claim at issue within a few weeks of the loss" and here "the remaining portion of Legend's Creek's claim that is the subject of this lawsuit was not brought to Travelers' attention until . . . barely two weeks before the suit limitation period expired." *Id.* at 9. This case is not an example of "an insurer lulling its insured into not pressing his rights and then ambushing the insured with the passage of the limitation period" when "there was no negotiation with respect to the undamaged elevations of the buildings" and "Legend's Creek demanded replacement of these elevations for the first time two weeks before the expiration of the limitation period" *Id.* at 9–10.

---

[1]*See, Summers v. Auto-Owners Ins. Co.,* 719 N.E.2d 412, 416 (Ind. Ct. App. 1999) ("Insurance Company did not reach the settlement negotiation stage. Indeed, no offer of money ever occurred. Instead, Insurance Company simply attempted to investigate the claim pursuant to its policy. Thus, the exception does not apply, and Insurance Company was under no obligation to expressly put Summers on notice that litigation within one year would be necessary if he wished to pursue his claim further."); *Schafer v. Buckeye Union Ins. Co.*, 381 N.E.2d 519 (Ind. Ct. App. 1978) (explaining that an insurer generally has no duty to advise the insured of a suit limitation provision in an insurance policy).

In reply, Legend's Creek contends that the core issue is whether Travelers' "actions gave Legend's [Creek] the impression that it would not need to resort to litigation to recover its losses." (Filing No. 103 at 3.)  When viewing the facts in its favor, Legend's Creek argues that "[t]he record is replete with instances of Travelers dragging its feet in paying this claim": it "drastically underpaid" Legend's Creek initially, waited too long to issue "payment for replacement siding," and, ultimately, "ran out the clock by stalling at every available opportunity." *Id.* Travelers' purposeful lethargy, as well as it "ignor[ing]" requests for extensions of policy benefits and "negotiat[ing] the claim for months after the anniversary," shows that it attempted "to game the claim process in its favor." *Id.*

The assertions presented by Legend's Creek merely refurbish much of the argument it already raised on summary judgment.  Based on this same argument, the Court concluded that the designated evidence showed that Legend's Creek knew it was going to ask Travelers to replace the three undamaged elevations of the buildings two months before it made the request, and for whatever reason, Legend's Creek waited two months to move its chess piece.  It is clear that Travelers did not lull Legend's Creek into believing that the two-year suit limitation would not be enforced, and affirmative notice is not required in Indiana.  As previously stated, "a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC*, 2009 U.S. Dist. LEXIS 25485, at \*7.  Moreover, the Court has already determined that the appraisal award does not change the Entry's outcome, *see supra* Section II.A, and it will not entertain this overt invitation to "relitigate" this already-decided issue (see Filing No. 86 at 10–11 (determining "that Indiana law does not impose an affirmative duty on an insurer to notify its insured of its intent to enforce the suit limitation provision").

**D.**   **Obligation of Travelers to Pay Appraisal Award**

Fourth, Legend's Creek argues that the Court should "clarify that the appraisal award is valid and that Travelers is obligated to pay it." (Filing No. 91 at 10.)  In fact, even if "the Court is not going to reverse its decision, equity would still favor obtaining the correct result which is reflected in the appraisal award."  *Id.* at 11.  Because the appraisal process is separate under the policy from the provision concerning the suit limitation period, "the equitable result" is for the Court to order Travelers to pay the award.  *Id.*

In response, Travelers asserts that the Court, in its summary judgment entry, properly halted the appraisal process Travelers objected to all along."  (Filing No. 102 at 10).  A decision to reverse that decision, as supported by reasoning in persuasive caselaw, "would allow an insured to wait years after a suit limitation provision expired to demand appraisal."  *Id.* (citing *Johnson v. Mut. Serv. Cas. Ins. Co.*, 732 N.W.2d 340, 346 (Minn. Ct. App. 2007); *Nat'l Refrigeration, Inc. v. The Travelers Indem. Co. of Am.*, 947 A.2d 906, 910 (R.I. 2008)).

In reply, Legend's Creek argues that "this Court's previous Order [(ordering the appraisal)] and Travelers' own policy make the appraisal award binding." (Filing No. 103 at 4.) In fact, "Travelers' appraiser agreed to the ultimate appraisal award, and Travelers began issuing payments to Legend's [Creek] to satisfy the award."  *Id.*  Though Travelers complains "that it was compelled to engage in the process," the result requires payment by "the plain terms of its policy."  *Id.*  The policy "does not impose any time limit precluding the payment of an appraisal award," and Travelers may not "change the terms of its policy simply because it does not want to honor an appraisal award that it agreed to pay."  *Id.*

The Court's summary judgment entry determined that because it granted Travelers' Motion for Summary Judgment, "there is no need to continue the process of appraisal." (Filing No. 86 at

20.)  As definitively voiced in the Entry ordering that appraisal, determining under the policy that "Legend's [Creek] may exercise its contractual appraisal right is not to endorse . . . the appraiser's fact-finding as binding notwithstanding any legal defenses Travelers may assert."  (Filing No. 81 at 6; *id.* at 5 ("Travelers' Policy provides the insurer the right to retain its right to deny the claim. In other words, the policy expressly contemplates that the insurer may deny coverage and assert defenses—including that the Policy's coverage does not extend to matching replacement siding with existing siding—*after* an appraisal has taken place to determine the amount of loss.") (quotation omitted).)  The Court does not now deviate from this conclusive statement and will not "affirm the validity of the appraisal award" and order that Travelers pay it (*see* Filing No. 91 at 12).

### E.      Clerical Error

Fifth, Legend's Creek notes that while the Court "stated on the first page of its Memorandum that it '*denies* Travelers' Appeal of the Magistrate's decision because that issue is moot' . . . , in the final judgment recorded on the docket, the Clerk recorded that the Court *granted* Travelers' appeal." (Filing No. 91 at 11) (quoting Filing No. 86 at 1) (emphasis added). Legend's Creek succinctly concludes that "[t]his was clearly a clerical mistake, and the Court should correct the record." *Id.*

In response, Travelers points out that "Legend's Creek does not recommend a specific correction."  (Filing No. 102 at 11.)  For its part, however, "Travelers respectfully suggests that the sentence on page 1 of the Order noting that Travelers' Appeal of the Magistrate Judge's Order is moot should be changed to 'granted' as it is on page 20 of the Summary Judgment Order."  *Id.* Because summary judgment resolved the suit "in its entirety," Travelers concludes, its objection to the Entry ordering the appraisal should be granted.  *Id.*

To be sure, the first page of the Court's summary judgment entry reads that "the Court **denies** Travelers' Appeal of the Magistrate Judge's Decision because that issue is moot," while page twenty and the docket entry state that "Travelers' Appeal of the Magistrate Judge's Order, (Filing No. 83), is also **GRANTED**." (Filing No. 86.)  The first page of the summary judgment entry contains a scrivener's error and, consistent with the rationale expressed throughout the entry, should instead read that "the Court **grants** Traveler's Appeal of the Magistrate Judge's Decision". That correction will be made,[2] but because the docket entry (and the entry's conclusion section) accurately reflects the disposition of that motion, the Court need not reconsider its entry on this minor typographical error.

## IV.   CONCLUSION

For the preceding reasons, the Court **DENIES** the Motion to Amend or Alter Judgment filed by Legend's Creek (Filing No. 90).

**SO ORDERED.**

Date:  1/29/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

William David Beyers
BUCHANAN & BRUGGENSCHMIDT, P.C.
bbeyers@bbinlaw.com

David E. Miller
SAEED & LITTLE LLP
david@sllawfirm.com

---

[2] In  a separate Entry, the Court will docket an amended entry as of today's date to correct the scrivener's error so that the sentence on page one of the Summary Judgment Order is corrected to state "Travelers' Appeal of the Magistrate Judge's Order is granted."

Matthew P. Fortin
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
mfortin@fgppr.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

Matthew S. Ponzi
FORAN GLENNON PALANDECH & PONZI, PC
mponzi@fgppr.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-02782-TWP-MPB |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, | ) ) ) | |
| Defendant. | ) | |

**AMENDED ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND APPEAL OF THE MAGISTRATE JUDGE'S DECISION**

This matter is before the Court on Defendant The Travelers Indemnity Company of America's ("Travelers") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Filing No. 71.) After Travelers denied a hail and windstorm claim submitted under a condominium insurance policy, Plaintiff Legend's Creek Homeowners Association, Inc. ("Legend's Creek") brought this action alleging Travelers breached their insurance contract and acted in bad faith. (Filing No. 11.) Also pending is Travelers' Appeal of the Magistrate Judge Order ordering an appraisal. (Filing No. 83.) Because the Court **grants** Travelers' Motion for Summary Judgment, there is no need for an appraisal. Therefore, the Court **grants** Travelers' Appeal of the Magistrate Judge's Decision.

**I.     BACKGROUND**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, they are presented in the light most favorable to Legend's Creek as the non-moving party. *See Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.,* 477, U.S. 242, 255 (1986).

Legend's Creek is an Indiana Corporation that operates a condominium association consisting of five residential buildings, a series of detached garages, and a clubhouse located in Indianapolis, Indiana (the "Property"). (Filing No. 73-2 at 13-15.) Travelers is a Connecticut corporation that, among other things, provides insurance to residential properties. (Filing No. 73-1.) Travelers issued a condominium insurance policy (the "Policy") to Legend's Creek for coverage for the period September 1, 2015 to September 1, 2016. (Filing No. 73-3.) The Policy insured Legend's Creek against the risk of direct physical loss or damage to the Property subject to certain terms and conditions. *Id.* The Policy contained the following provision:

No one may bring a legal action against us under this Coverage Form unless:

a. There has been full compliance with all of the terms of this Coverage Form; and
b. The Action is brought within 2 years after the date on which direct physical loss or damage occurred.

*Id.* at 44.

The Policy also contains the following limitation of liability on a replacement cost basis:

(c) We will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs (i), (ii) or (iii) subject to Paragraph (d) below:

(i) The Limit of Insurance applicable to the lost or damaged property;
(ii) The cost to replace the lost or damaged property with other property:

a) of comparable material and quality; and
b) used for the same purpose; or

(iii) The amount actually spent that is necessary to repair or replace the lost or damaged property.

*Id.* at 40.

On or about May 1, 2016, the Property was damaged by hail and wind during a storm. (Filing No. 73-2 at 12-13.) The storm damage encompassed the roofs, gutters, and north elevations of siding on four residential buildings and four detached garages. (Filing No. 73-4 at 16-18.) At

2

the time of loss there were two different types of siding installed at the Property. *Id.* at 24. Buildings 1 and 2 and Garages 1 and 2 were clad with a fiber cement siding product manufactured by James Hardie known as "HardiePlank – Select Cedarmill." (Filing No. 73-5 at 34.) There is conflicting evidence in the record as to whether the siding was pre-finished, meaning it was painted in the factory and then installed, or whether it was field-finished, meaning it was primed in the factory and painted after installation.  *Id.* at 53; Filing No. 73-6.  For purposes of this Entry, the Court accepts Legend's Creek's position that the HardiePlank was pre-finished.  At the time of the replacement, James Hardie no longer manufactured this specific siding. (Filing No. 73-10 at 1.) Buildings 3 and 4 and Garages 3 and 4 were clad with a pre-finished hardboard siding product manufactured by Masonite.  (Filing No. 73-5 at 19-21; 26-27.)  The Masonite siding was also discontinued.  (Filing No. 80-1 at 9.)

On September 22, 2016, Legend's Creek retained a public adjuster, Kris Kassen ("Kassen") of Spartan Claims, to assist with its claim for the loss and damage caused by the May 1, 2016 storm.  (Filing No. 73-4 at 14.)  That same day, Kassen notified Travelers of the loss to the Property.  *Id.*  Spartan Claims' contract with Legend's Creek entitled it to ten percent of the insurance proceeds paid by Travelers. (Filing No. 73-9 at 1.)

On October 6, 2016, Kassen learned from a representative of James Hardie that the James Hardie siding installed on Buildings 1 and 2 and their corresponding garages was no longer in production.  *Id.* at 19.  On November 3, 2016, Travelers issued payment to Legend's Creek in the amount of $644,674.87, which represented the estimated cost to replace the roofs and gutters as well as to repair the damaged north elevations of siding, less the deductible and recoverable depreciation.  (Filing No. 73-11; Filing No. 73-4 at 22.)  This amount reflected the idea that the north facing siding would undergo spot repairs rather than complete replacement.  (Filing No. 73-

4 at 36.)  Upon receipt of this initial payment, Kassen emailed Steven Knopp ("Knopp"), the adjuster handling the claim for Travelers, to tell him that his estimate "is one of the most well written and respectable estimates I've ever seen come out of Travelers, or any other carrier for that matter." (Filing No. 73-12.)

But Kassen soon changed his mind. January 20, 2017, Kassen informed Knopp that the proposed spot repairs to the damaged siding were no longer acceptable to Legend's Creek—it wanted complete replacement of the north-facing siding.  (Filing No. 73-4 at 23-24.)  On February 24, 2017, Travelers issued a supplemental payment of $238,766.88 for increased work on roof replacement, which would alleviate the need to replace the siding.  *Id.* at 26; Filing No. 73-11 at 2.  Travelers later issued another supplemental payment of $28,438.02 for increased scope of repair to the siding.  (Filing No. 73-4 at 30-31; Filing No. 73-11 at 2.)

On September 28, 2017, Kassen emailed Knopp to notify him of Legend's Creek's position that the north-facing siding needed to be replaced and spot repairs were insufficient. (Filing No. 73-13.) Travelers prepared an estimate that included replacement of the north-facing siding and sent it to Kassen. (Filing No. 73-14.) The following day, Knopp replied with his own estimate, which also called for replacement of only the north-facing siding. (Filing No. 73-15.) After discussing the difference in these estimates with Travelers' siding consultant, Kassen sent Knopp an estimate that resolved the differences. (Filing No. 73-16.) On February 7, 2018, Knopp sent Kassen a final estimate of an additional payment of $44,007.01, that reflected those revisions and provided for replacement of all north-facing siding. (Filing No. 73-17.) In his email, Knopp apologized for the delay and requested that Kassen inform him if this last estimate was "good to settle" the matter between the two parties. *Id.* at 1.

4

The February 7, 2018 estimate provided for replacement of the north-facing siding on Buildings 1 and 2 with primed but unfinished fiber cement product and replacement of the north-facing siding on Buildings 3 and 4 with primed and pre-finished hardboard product, and an allowance of approximately $10,000.00 to paint the unfinished siding. (Filing No. 73-11 at 2; Filing No. 73-17 at 19-24.)   On February 13, 2018, Kassen sent an e-mail to Legend's Creek's property manager, board of directors, and contractor stating:

> I am writing this email to act as directions to all parties regarding the future progress of this claim and the series of events that shall take place….
>
> At this point, I have finalized with Travelers the estimate that includes all previous items as well as the approved north elevations of siding for replacement…. I have gotten the carrier to agree to replacement of the north elevations, with the expectation that the north elevation siding at Legend's Creek will be replaced with a like kind/quality product; the closest match available. The four large buildings along with the four garages will have their north elevations of siding replaced with PreFinished, Primed James Hardie HardiePlan[k] – Select Cedarmill 8.25"…. This siding will NOT be painted thereafter as it was not painted prior to the loss. Amos will be installing the new siding, with me present to oversee production and gather evidence. I will then evaluate the argument of full replacement of all of the siding due to a gross mismatch IF there is a gross mismatch. We are expecting that there will be, however, we must have the work done prior to making that argument.
>
> There will be no warranty on this new unpainted siding, as the manufacturer's installation instructions state that product should be painted after being installed within 180 days…. This should not be alarming, as there is not currently a manufacturer's warranty on the existing siding.
>
> However, do not fret. State building code mandates that all manufacturer installation instructions should be adopted as building code. Your policy has an additional endorsement on it known as "Ordinance or Law" or "Code Upgrade." This endorsement will allow me to argue that the new siding must be painted per that manufacturer's installation instructions, in correspondence with state building code. I will not be making that argument until I have had enough time to argue full replacement of the siding after the north elevations have been replaced.
>
> Remember that this is somewhat a game of chess. Gabe and I have poised Legend's Creek to ultimately win this game. At this point, we must proceed with the moves that we have planned out several turns ahead of Travelers. If everything goes according to plan, Legend's Creek will ultimately have all new siding, which will then be painted in accordance with the manufacturer's installation instructions.

> The instructions above are how I am advising all parties involved to proceed. If there are any questions or concerns, please address them with me promptly.

(Filing No. 73-18.)

The email demonstrates that Kassen, as well as Amos Exteriors, the company that would be replacing the siding, expected the new siding to be a "gross mismatch" with the existing siding, necessitating replacement of all siding. (Filing No. 73-4 at 51-52; Filing No. 73-8 at 50-51.) Amos Exteriors proceeded to replace the siding on the north elevations of the four buildings and detached garages with primed unfinished HardiePlank – Select Cedarmill. (Filing No. 73-8 at 49, 56.) However, Legend's Creek did not paint the unfinished siding within 180 days of installation as recommended by the manufacturer. (Filing No. 73-2 at 69-70.)

On April 13, 2018, following the installation of the siding, Kassen emailed Knopp asserting that Travelers owed for replacement of all siding. (Filing No. 73-20.) In particular, the email stated:

> [i]t is my assertion that Travelers owes for replacement of the remaining elevations of siding to include the necessary trim work and painting as there is now a gross mismatch of the damage portion of the property whereas before the loss there was not. This is resulting in a diminution of property value.

*Id*. at 2. This email was the first time Legend's Creek had requested replacement of any siding other than the north-facing siding that was damaged in the storm. Kassen's email also stated, "[a]t this time, I would like to also request an extension of replacement cost benefits on this claim as we are quickly approaching the May 1st date of loss, and there is still reconciliation outstanding." *Id.* at 3.

On April 15, 2018, Knopp responded, "Thank you for the email and info. I will review fully upon my return to the office later this week." (Filing No. 73-21 at 2.) On April 24, 2018, Knoop wrote "[w]anted to give you an update to advise that your inquiry to the claim is still currently being reviewed." *Id*. at 1. On April 26, 2018, Kassen asked by email "[w]ill an extension

6

be granted so that we can continue to resolve this outstanding issue? I know the DoL is coming up here shortly…". *Id.* at 1.

On May 11, 2018, Knopp emailed Kassen to inform him that Travelers was preparing a supplemental payment based on the February 7, 2018 estimate, which provided for replacement of only the north-facing siding. (Filing No. 73-22.) During a telephone call on June 6, 2018, Knopp informed Kassen that Travelers had denied Legend's Creek's claim for replacement of all siding. (Filing No. 73-24; Filing No. 73-4 at 65.) On June 21, 2018, Travelers issued the final supplemental payment of $44,007.01 for replacement of the north-facing siding. (Filing No. 73-11 at 2.) Legend's Creek filed this suit on July 23, 2018 alleging breach of contract and bad faith. (Filing No. 73-25.)

## II.   LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). A disputed fact must be "material," which means that it might affect the outcome of the case under the applicable substantive law. *Liberty Lobby*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts do not preclude summary judgment. *Id.* A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

### III.   DISCUSSION

Regarding Count I:  Breach of Contract, Travelers argues summary judgment is appropriate because Legend's Creek's claims are barred by the two-year Suit Limitation Provision in the Policy. Regarding Count II:  Bad Faith, Travelers argues that it handled Legend's Creek's claim in good faith, and Legend's Creek lacks evidence to the contrary.  Because it is dispositive, the Court begins its analysis with breach of contract claim.

### A.   Count I:  Breach of Contract

Legend's Creek  argues that because Travelers did not pay for the replacement of the other three sides of the siding and did not pay to properly repair the north facing siding, it breached the Policy.  The Policy states that no one may bring legal action against Travelers unless that action is brought within two years of the date of loss. (Filing No. 73-3 at 44.)  It is undisputed that the date of loss in this case is May 1, 2016, and Legend's Creek did not commence this action until July 23,

2018—more than two years after the date of loss. Travelers argues this delay entitles it to summary judgment. Legend's Creek's defense to this argument is two-fold, they argue that Travelers waived the two-year period as a matter of law, or a factual dispute exists regarding waiver. (Filing No. 79 at 16.)

Legend's Creek specifically argues (1) that public policy supports waiver rather than forfeiture, (2) that Travelers had a duty to notify Legend's Creek of its intent to strictly enforce the limitation period, and (3) that Travelers implicitly waived its right to enforce the limitation provision by continuing to negotiate and investigate the claim beyond the two-year period. Alternatively, Legend's Creek contends that it substantially complied with the limitation provision, and this particular provision of the contract is ambiguous. Legend's Creek also maintains that Travelers waived its right to enforce the suit limitation provision in the Policy. Its argument breaks down into three parts, which the Court will discuss separately.

1.    **Public Policy**

Legend's Creek argues that finding waiver here comports with public policy in Indiana. Suit limitation clauses in insurance contracts are unquestionably legal in Indiana. *Schafer v. Buckeye Union Ins. Co.*, 381 N.E.2d 519, 522 (Ind. Ct. App. 1978) ("It is well established in Indiana that, while not favored, … contractual limitations shortening the time to commence suit are valid, at least so long as reasonable time is afforded."). Legend's Creek notes that Indiana courts disfavor these provisions because (1) they contravene statutes of limitation set by the legislature, (2) there is a societal interest in support of commercial insurance of loss, and (3) a limitation period might cause a party to waste resources by bringing suit only to preserve its contractual right to do so, although litigation may ultimately be unnecessary. (Filing No. 79 at 16-17, (citing *Schafer*).)

9

The Court accepts these public policy considerations as relevant to the rules of waiver in Indiana but does not consider them to be determinative of individual disputes. In other words, these policy considerations may have been the rationale for development of a waiver rule that is especially generous to policy holders, but the Court must still evaluate whether a Defendant has waived its right to enforce a suit limitation provision under that rule. The Court addresses that question as to the specific facts of this case in Section III.A.3 of this Entry.

### 2.   Duty to Notify

Legend's Creek argues that "Travelers had a duty to speak if it was going to strictly enforce the two-year limitation." (Filing No. 79 at 19.) It cites the following maxim of Indiana law:

> [I]t is the duty of the insurers, pending the consideration of the proofs of loss, to bear themselves with all good faith towards the claimant, and if they are satisfied with the proof furnished, and have, or have not, the right to demand further proof before their liability becomes fixed, they ought to make known to the assured the fact and nature of these demands without unnecessary delay.

*Huff v. Travelers Indem. Co.*, 363 N.E.2d 985, 991-92 (Ind. 1977) (quoting *Aetna Ins. Co. v. Shreyer*, 85 Ind. 362, 366-67 (Ind. 1882)). Legend's Creek interprets this statement of law as a duty requiring an insurer to notify the insured that it intends to enforce the suit limitation provision, but the Court does not see it that way. A clearer recitation of Indiana's standard can be found in the paragraph preceding that quote. "[T]he inquiry is whether anything has been done in the relationship between the insurer and the insured which would cause the insured to reasonably believe the limitation period will not be insisted upon." *Huff* at 991. The Court views this second quotation as the more definitive recitation of Indiana's standard due to its prevalence in the caselaw that has followed *Huff*. *See, e.g., Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 415 (Ind. Ct. App. 1999) (quoting *Wingenroth v. American States Ins. Co.*, 455 N.E.2d 968, 970 (Ind. Ct. App. 1983)).

The Court determines that Indiana law does not impose an affirmative duty on an insurer to notify its insured of its intent to enforce the suit limitation provision. Instead, the question is whether a reasonable insured would have the impression that the insurer *does not* intend to enforce the provision. The Court addresses that question in the next subsection.

### 3.   <u>Implicit Waiver by Continued Negotiation and Investigation</u>

Suit limitation provisions in insurance contracts may be waived either expressly or impliedly. *Summers*, 719 N.E.2d at 414. "A waiver or estoppel may result from acts of insurer causing insured or claimant under the policy to delay bringing suit until after the time provided for in the policy." *Id.* at 414-15 (quoting *Huff*) (internal quotations omitted). Contractual limitation periods may be waived if an insurer's conduct is sufficient to create a reasonable belief on the part of the insured that strict compliance with the policy provision will not be required. *Id.* (quoting *Wingenroth*, 455 N.E.2d at 970. Thus, the focus of the court's inquiry is whether the insurer has done anything that would cause the insured to reasonably believe the limitation provision will not be enforced.

Legend's Creek argues there are communications between the parties that show Travelers did not intend to enforce the two-year limitation period for bringing suit. First, after Legend's Creek notified Travelers of the loss on September 22, 2016, the parties "consistently and frequently discussed settling" the claim. (Filing No. 79 at 22.) Second, Legend's Creek states that "[o]n April 13, 2018, Kassen brought to Travelers' attention the gross mismatch between the siding and requested replacement for the other three sides and an extension past the two-years." *Id.* Travelers responded, several times informing Kassen that it was reviewing his request but not addressing his query about the two-year period. Third, Travelers continued to act on the claim past the May 1, 2018 date on which the two-year window to file suit expired. On that day, Travelers agreed to

11

release additional funds related to repair and replacement of siding, then twice during May indicated it was still considering Legend's Creek's request to replace all siding, only to deny that request on June 6, 2018.  On June 21, 2018, Travelers paid more to Legend's Creek for the replacement of the north-facing siding.

The posture of this case entitles Legend's Creek to have all factual inferences drawn in its favor.  But the Court does not ignore facts that are inconvenient to the non-movant nor does it accept the non-movant's assertions if they are not supported by evidence in the record.  With that in mind, the Court finds it necessary to correct Legend's Creek's narrative so that it conforms with the record evidence.

First, Legend's Creek contends that Kassen twice asked Travelers' representative for an extension of the two-year suit limitation period and was ignored on both occasions. The record shows that is not the case.  On April 13, 2018, when Kassen first informed Knopp that he believed Travelers must pay for the replacement of all siding on the damaged buildings, he also "request[ed] an extension of replacement cost benefits on this claim as we are quickly approaching the May 1st date of loss". (Filing No. 73-20 at 3.)  He did not mention filing suit or the suit limitation provision of the Policy.  On April 26, 2018, Kassen asked if "an extension [will] be granted so that we can continue to resolve this outstanding issue?" (Filing No. 73-21 at 1.)  Again, the discussion is regarding the claim only, and he did not mention filing suit or the suit limitation provision.

Perhaps if this were the only evidence in the record about these requests, Legend's Creek would be entitled to an inference that it requested an extension of the suit limitation period and Travelers ignored that request.  But other evidence, specifically Kassen's deposition testimony, indicates that his request did not refer to the suit limitation provision.

Q Okay. And what is the – what are you asking for an extension of?

12

A I became aware later that Travelers does not have, at least to my understanding, a date at which – or a point at which after the loss occurs that they will cut off replacement cost benefits, in other words, recoverable depreciation. And so I had just assumed that that may – that may be a provision of the policy.

Q Okay. So you were requesting an extension of time to claim replacement cost benefits because, at that point in time, you assumed that there was a deadline for that?

A Correct.

Q Okay. Were you requesting an extension of anything else in that e-mail?

A Specifically on April 26?

Q Yes. I'm just referring to the e-mail itself.

A I don't believe so.

(Filing No. 73-4 at 62-63.) Given Kassen's admission that he was not referring to the suit limitation provision, no reasonable juror could find that Legend's Creek made a request for an extension of the suit limitation period and Travelers ignored that request.

Second, Travelers mischaracterizes the claims process as "continued negotiations … leading up to and after the two-year anniversary of the date of loss." (Filing No. 79 at 23.) This characterization ignores the specifics of the parties' discussions, which, until April 13, 2018, only involved repair or replacement of the north-facing siding that was damaged in the storm.  Kassen testified in his deposition that prior to sending the email on April 13, 2018, he had never requested that Traveler's pay for anything more than replacement on the north elevation of siding (Filing No. 73-4 at 61.) Travelers approved Legend's Creeks' claim as to the north-facing siding, and while the very last of that money was paid out after the two-year suit limitation period had expired, none of that money is at issue in this case.  The breach Legend's Creek alleges is based on Travelers' refusal to pay for replacement of the siding on the other faces of its buildings.  Again, this siding was not

13

damaged in the storm nor did Legend's Creek claim it needed replacement until April 13, 2018—
102 weeks into the 104-week suit limitation period.

Moreover, evidence in the record indicates Legend's Creek knew it expected to make a
claim for replacement of all siding at least a month before it informed Travelers of that expectation.
In an email to Legend's Creek's principals on February 13, 2013, Kassen wrote that he intended to
evaluate whether Legend's Creek could make a claim for replacement of all siding based on a
"gross mismatch" between the new north-facing siding and the rest of the siding.  He said that he
expected there would be a gross mismatch but did not report that expectation to Travelers until a
month later.  (Filing No. 73-18.)  Based on that chicanery, it is disingenuous to assert that Travelers
dragged its feet by continuing to investigate the claim beyond the suit limitation period.

The record shows that Legend's Creek essentially made a new claim two weeks prior to the
two-year limitation date.  Prior to that point, it had only requested replacement of the north-facing
siding that was damaged in the storm.  Requesting replacement of *all* siding is not a "negotiation,"
as Legend's Creek frames it, but a new claim.  It does not stem from the same date of loss, as no
parties contend any siding but that facing north was damaged in the storm on May 1, 2016.  And
it does not involve the same portion of the covered property.  The parties engaged in no
negotiations on this claim to replace all the siding.  Legend's Creek made the claim and Travelers
denied it.  That is not a negotiation.

The point of the claims process is to enforce the Policy the two parties agreed to.  In other
words, after damage or loss occurs, the two parties look to the contract to determine what each
party is entitled to and responsible for.  The Court is persuaded by Travelers argument that the
record shows Legend's Creek's agent, Kassen, viewed the claims process as a "game" in which the
goal was to out strategize an opponent and gain an advantage.  In this game, he inverted the claims

process, first determining a desired result (for Legend's Creek to "ultimately have all new siding") and then devising a plan to achieve that result through the claims process.

That is the version of the facts supported by the record.  It does not include any action on the part of Travelers that would give Legend's Creek a reasonable impression that Travelers did not intend to enforce the suit limitation provision of the Policy.  Nor is there evidence that Travelers' actions caused Legend's Creek to delay filing suit.  Thus, Travelers has not waived its right to rely on Legend's Creek's noncompliance with that provision.

Legend's Creek cites to *Huff*, in which the Indiana Supreme Court found that an insurer waived the suit limitation provision and continued to exchange letters regarding the claim through and beyond the limitation period.  363 N.E.2d at 992.  But *Huff* is distinguishable because in *Huff* the parties were discussing the same claim up until and through the expiration of the suit limitation period.  Here, Legend's Creek sprung a new claim on Travelers two weeks before expiration of the suit limitation period and now attempts to use that late claim to escape its bargained-for obligation to file suit within two years of loss if it files suit at all.

Legend's Creek also relies on *Schafer*, explaining that the parties in that case were engaged in active negotiations when the limitation period lapsed.  But Legend's Creek and Travelers were not actively negotiating in April and May of 2018.  The insureds in *Schafer*, after giving notice, submitting proof of loss, and providing examinations under oath, offered a compromise settlement of their fire damage claim, provided counter-offers and then made another settlement proposal before the suit limitation  period expired.  *Schafer* at 520.  Here, Travelers had approved and was in the process of paying out Legend's Creek's claim for replacement of the north-facing siding. Meanwhile, Legend's Creek filed a claim for replacement of all siding, which Travelers later denied.  Legend's Creek's rhetorical tactic is to call its gamesmanship and the late filing of a new

15

claim "negotiating" and then compare its facts to cases in which the parties were actively negotiating.  But no negotiation was underway in this case at the end of the limitation period no matter how many times Legend's Creek insists it was.

For those reasons, Travelers has not waived its right to enforce the two-year suit limitation provision of the Policy.  Because Legend's Creek did not comply with that provision, Travelers is entitled to judgment as a matter of law.

### 4.  Substantial Compliance

Alternatively, Legend's Creek argues Travelers' Motion for Summary Judgment should be denied because Legend's Creek substantially complied with the suit limitation provision.  It cites one case in support of this argument, *Cont'l Ins. Co. v. Thornburg*, 219 N.E.2d 450 (Ind. Ct. App. 1966).  In that case, the Indiana Court of Appeals found that an insurer had waived the contractual suit limitation period because the insured relied upon a letter from the insurer asking for an in-person meeting.  *Id.* at 454.  The court determined under principles of equity that the suit limitation period was at least suspended between the day the insured received the letter and the day the meeting took place.  That suspension meant that the insured had ultimately filed suit within the limitation period.  The case does not discuss a substantial compliance exception to a contraction suit limitation provision.

Even if *Continental* can be read to create an exception for substantial compliance, the Court would not apply it here.  The principles of equity do not aid Legend's Creek in this circumstance, as the evidence shows it was the party attempting to game the claims adjustment process and that it was Legend's Creek that dragged its feet in asking for replacement of all siding.  It would contravene equitable principles to allow an insured to circumvent a suit limitation provision by filing a new claim at the eleventh hour that the insurer must evaluate.

16

5.      **Ambiguity**

Last, Legend's Creek argues that the suit limitation provision is ambiguous.  "The Policy is ambiguous whether the insured must file suit within two years of date of loss where the claim is still under review at the two-year deadline". (Filing No. 79 at 31.) Legend's Creek  argues that the Policy provision is self-contradictory because in certain cases it would not be possible to comply with both provisions.  Again, the provision reads:

No one may bring a legal action against us under this Coverage Form unless:

a.  There has been full compliance with all of the terms of this Coverage Form; and
b.  The action is brought within 2 years after the date on which direct physical loss or damage occurred.

Filing No. 73-3 at 44.  Legend's Creek argues that for cases where the investigation of the claim takes more than two years from the date of loss, an insured cannot both comply with all the terms of the coverage form and file suit within two years.

The Court disagrees.  An insured can comply with the coverage form by cooperating in the investigation and allowing the insurer to inspect the property and still file suit within two years if necessary.  Indeed, if Legend's Creek had filed suit before May 1, 2018, it would have complied with both provisions, as no evidence showed it failed to comply with the terms of the Coverage Form.  The provision is similar to one considered in *Royer v. USAA Cas. Ins. Co.*, 781 F.Supp.2d 767, 770 (N.D. Ind. 2011).  The suit limitation provision in that case read:

**7. Suits Against Us.** No action can be brought against us unless you have:

a. given us notice of the loss,

b. complied with all other provisions, and

c. started the action within one year after the date of the loss.

17

Like the provision at issue here, that provision requires the insured to both comply with other provisions of the policy and file suit within a certain time frame of the date of loss.  The *Royer* court found that provision to be unambiguous, and this Court agrees.  There is nothing inherently contradictory about a provision that requires the insured to comply with the policy and to file suit within a certain time frame.

**B.**     **Bad Faith**

To prove bad faith, Legend's Creek must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability.  *Villas at Winding Ridge v. State Farm Fire & Cas. Co*., 942 F.3d 824, 833 (7th Cir. 2019).  Legend's Creek must also prove Travelers' "conscious wrongdoing" or "culpable mental state". Summary judgment on a bad faith claim is required when the insured presents no evidence or facts that the insurer acted with a culpable state of mind, or where the undisputed facts demonstrate that an insurer "had a rational and principled basis for denying coverage".  *Thompson Hardwoods, Inc. v. Transportation Ins. Co*., 2002 WL 440222, at \*5 (S.D. Ind. Mar. 15, 2002); *Masonic Temple Association of Crawfordsville v. Indiana Farmers Mut. Ins. Co*., 779 N.E.2d 21 (Ind. Ct. App. 2002) (affirming partial summary judgment in favor of insurer on insured's bad faith claim where facts demonstrated insured had a "rational, principled basis" for denying liability).

Travelers argues that Legend's Creek "cannot come close to meeting its heavy burden of establishing, by clear and convincing evidence, that Travelers knew that there was no legitimate basis for denying liability for replacement of all of the siding at the Property."  (Filing No. 82 at 11.)  Travelers contends Legend's Creek has presented no evidence that shows it acted with the requisite culpable state of mind.

18

Legend's Creek does not dispute that Travelers had a legitimate basis for denying liability for replacement of the east, west, and south elevations of undamaged siding. Instead, Legend's Creek argues that Travelers consistently made unfounded delays in processing the claim. (Filing No. 79 at 34.) The Court is unpersuaded by Legend's Creek's argument. The designated evidence is replete with examples of the parties good faith negotiations during the periods of time that Legend's Creek now contends were unfounded delays. *See* (Filing No. 79 at 18, 22, 24.) A good faith dispute about the amount of a valid claim does not supply the grounds for a bad faith claim. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993). Poor judgment, negligence, and lack of a diligent investigation are likewise insufficient to establish bad faith. *State Farm Mut. Auto. Ins. Co. v. Gutierrez*, 844 N.E.2d 572, 580 (Ind. Ct. App. 2006). Contrary to Legend's Creek's contentions, the designated evidence shows that Travelers had a rational and principled basis for its actions. As noted in the background section of this Entry, Kassen admitted as much in his deposition testimony.

More importantly, Travelers cannot be liable for bad faith in the absence of a contractual breach. In Indiana, claims made against insurers for breach of the duty of good faith, while sounding in tort, are nonetheless subject to contractually agreed upon limitations provisions if brought by the insured. *Troxell v. Am. States Ins. Co.,* 596 N.E.2d 921, 925 (Ind. Ct. App. 1992) (suit limitation provision barred bad faith claim). Because the Court has determined there was no breach of contract, Travelers is entitled to summary judgment on the bad faith claim as well.

## IV.   CONCLUSION

The Court holds that Legend's Creek failed to comply with the suit limitation provision of the Policy. Legend's Creek was represented by a public adjuster, consulted with counsel during the claim process, had a copy of the policy and was aware that it had two years from the date of

loss to commence legal action, yet never requested an extension of time to file suit and failed to file suit within the time frame required in the contract. Accordingly, it has no right to relief under that contract. Therefore, Travelers' Motion for Summary Judgment, (Filing No. 71), is **GRANTED** as to Legend's Creek's claims for breach of contract and bad faith.  As that ruling resolves this suit, there is no need to continue the process of appraisal. Accordingly, Travelers' Appeal of the Magistrate Judge's Order, (Filing No. 83), is also **GRANTED**.  The Court will issue final judgment in a separate order.

       **SO ORDERED.**

Date:  1/29/2021

_Tanya Walton Pratt_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

William David Beyers
BUCHANAN & BRUGGENSCHMIDT, P.C.
bbeyers@bbinlaw.com

David E. Miller
SAEED & LITTLE LLP
david@sllawfirm.com

Matthew P. Fortin
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
mfortin@fgppr.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

Matthew S. Ponzi
FORAN GLENNON PALANDECH & PONZI, PC
mponzi@fgppr.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

# *** PUBLIC DOCKET ***

APPEAL,CLOSED

**U.S. District Court**
**Southern District of Indiana (Indianapolis)**
**CIVIL DOCKET FOR CASE #: 1:18-cv-02782-TWP-MPB**

LEGEND's CREEK HOMEOWNERS ASSOCIATION, INC. v. TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA
Assigned to: Judge Tanya Walton Pratt
Referred to: Magistrate Judge Matthew P. Brookman
Case in other court:  7th Circuit, 20-03163
                        Marion County Superior 12, 49D12-
                        1807-PL-029055
Cause: 28:1332 Diversity-Insurance Contract

Date Filed: 09/10/2018
Date Terminated: 10/06/2020
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.**

represented by **David E. Miller**
SAEED & LITTLE LLP
133 West Market Street
No. 189
Indianapolis, IN 46204
317-371-5535
Fax: 888-422-3151
Email: david@sllawfirm.com
*ATTORNEY TO BE NOTICED*

**William David Beyers**
BUCHANAN &
BRUGGENSCHMIDT, P.C.
80 East Cedar Street
Zionsville, IN 46077
317-873-8396
Fax: 317-873-8396
Email: bbeyers@bbinlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**THE TRAVELERS INDEMNITY COMPANY OF AMERICA**

represented by **Eric C. McNamar**
LEWIS WAGNER LLP
501 Indiana Avenue

Suite 200
Indianapolis, IN 46202
317-237-0500
Fax: 317-630-2790
Email: emcnamar@lewiswagner.com
*ATTORNEY TO BE NOTICED*

**John Carl Trimble**
LEWIS WAGNER LLP
501 Indiana Avenue
Suite 200
Indianapolis, IN 46202
(317) 237-0500
Fax: (317) 630-2790
Email: jtrimble@lewiswagner.com
*ATTORNEY TO BE NOTICED*

**Matthew S. Ponzi**
FORAN GLENNON PALANDECH &
PONZI, PC
222 North LaSalle Street, Suite 1400
Chicago, IL 60601
312-863-5000
Fax: 312-863-5099
Email: mponzi@fgppr.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/10/2018 | 1 | NOTICE OF REMOVAL from Marion, case number 49D12-1807-PL-029055, filed by TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (Filing fee $400, receipt number 0756-5054872) (Attachments: # 1 Exhibit Complaint, # 2 State Court Record, # 3 Civil Cover Sheet) (McNamar, Eric) (Entered: 09/10/2018) |
| 09/10/2018 | 2 | NOTICE of Appearance by Eric C. McNamar on behalf of Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (McNamar, Eric) (Entered: 09/10/2018) |
| 09/10/2018 | 3 | NOTICE of Appearance by John Carl Trimble on behalf of Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (Trimble, John) (Entered: 09/10/2018) |
| 09/10/2018 | 4 | Corporate Disclosure Statement by TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA identifying Corporate Parent TRAVELERS CASUALTY AND SURETY COMPANY for TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA.. (McNamar, Eric) (Entered: 09/10/2018) |

| | | |
|---|---|---|
| 09/10/2018 | 5 | NOTICE of Parties' First Extension of Time, filed by Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (McNamar, Eric) (Entered: 09/10/2018) |
| 09/11/2018 | 6 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (HET) (Entered: 09/11/2018) |
| 09/12/2018 | 7 | NOTICE of Appearance by David E. Miller on behalf of Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Miller, David) (Entered: 09/12/2018) |
| 09/18/2018 | 8 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, William David Beyers hereby notifies the Clerk of the court of changed contact information. (Beyers, William) (Entered: 09/18/2018) |
| 09/19/2018 | 9 | ORDER SETTING INITIAL PRE-TRIAL CONFERENCE - Initial Telephonic Pretrial Conference set for 12/5/2018 at 11:00 AM (Eastern Time) before Magistrate Judge Matthew P. Brookman. The information needed to participate in this telephonic conference will be provided by a separate notification. No fewer than seven (7) days before the IPTC, counsel must file a Proposed CMP. SEE ORDER. Signed by Magistrate Judge Matthew P. Brookman on 9/19/2018.(JRB) (Entered: 09/19/2018) |
| 09/19/2018 | 10 | NOTICE of Appearance by William David Beyers on behalf of Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 09/19/2018) |
| 09/19/2018 | 11 | AMENDED COMPLAINT against TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, filed by LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Final Estimate from Travelers)(Beyers, William) (Entered: 09/19/2018) |
| 09/26/2018 | 12 | MOTION for Attorney(s) Matthew P. Fontin to Appear pro hac vice (Filing fee $100, receipt number 0756-5080951), filed by Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (Attachments: # 1 Exhibit A - Certification of Matthew Fontin, # 2 Text of Proposed Order) (McNamar, Eric) (Entered: 09/26/2018) |
| 09/26/2018 | 13 | MOTION for Attorney(s) Matthew S. Ponzi to Appear pro hac vice (Filing fee $100, receipt number 0756-5080994), filed by Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (Attachments: # 1 Exhibit A - Certification of Matthew Ponzi, # 2 Text of Proposed Order) (McNamar, Eric) (Entered: 09/26/2018) |
| 09/28/2018 | 14 | ORDER granting 12 Motion to Appear pro hac vice. Attorney Matthew P. Fortin for TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA added. Signed by Magistrate Judge Matthew P. Brookman on 9/28/2018. (TMB) (Entered: 09/28/2018) |
| 09/28/2018 | 15 | ORDER granting 13 Motion to Appear pro hac vice. Attorney Matthew S. Ponzi for TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA added. Signed by Magistrate Judge Matthew P. Brookman on |

| | | |
|---|---|---|
| | | 9/28/2018. (TMB) (Entered: 09/28/2018) |
| 10/08/2018 | 16 | *Defendant's* ANSWER to 11 Amended Complaint , filed by TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (Attachments: # 1 Exhibit)(McNamar, Eric) (Entered: 10/08/2018) |
| 11/28/2018 | 18 | CASE MANAGEMENT PLAN TENDERED, filed by Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA . (McNamar, Eric) (Entered: 11/28/2018) |
| 12/03/2018 | 19 | SCHEDULING ORDER: On the Court's own motion, the Telephonic Initial Pretrial Conference set for 12/5/2018 is hereby RESCHEDULED for 12/4/2018 at 02:30 PM (Eastern Time) in Telephonic before Magistrate Judge Matthew P. Brookman. The information needed by counsel to participate in this telephonic conference has been previously provided at Docket No. 17 . Signed by Magistrate Judge Matthew P. Brookman on 12/3/2018.(TMB) (Entered: 12/03/2018) |
| 12/06/2018 | 20 | ORDER: CASE MANAGEMENT PLAN APPROVED AS SUBMITTED. Initial Pretrial Conference held on 12/4/2018. Discovery due by 7/10/2019. Dispositive Motions due by 9/10/2019. Settlement Conference set for 8/6/2019 at 02:00 PM (Eastern Time) in room #316, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana before Magistrate Judge Matthew P. Brookman. Status Conference set for 6/3/2019 at 10:30 AM (Eastern Time) in Telephonic before Magistrate Judge Matthew P. Brookman. Signed by Magistrate Judge Matthew P. Brookman on 12/6/2018.(TMB) (Entered: 12/06/2018) |
| 01/07/2019 | 21 | MOTION for Protective Order , filed by Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McNamar, Eric) (Entered: 01/07/2019) |
| 01/09/2019 | 22 | ORDER granting 21 Motion for Protective Order. Signed by Magistrate Judge Matthew P. Brookman on 1/9/2019. (JRB) (Entered: 01/09/2019) |
| 01/14/2019 | 23 | NOTICE of Service of Initial Disclosures , filed by Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (McNamar, Eric) (Entered: 01/14/2019) |
| 01/14/2019 | 24 | NOTICE of Service of Initial Disclosures , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Miller, David) (Entered: 01/14/2019) |
| 01/25/2019 | 25 | Witness List , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 01/25/2019) |
| 01/25/2019 | 26 | Exhibit List , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 01/25/2019) |
| 01/28/2019 | 27 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, David E. Miller hereby notifies the Clerk of the court of changed contact information. (Miller, David) (Entered: 01/28/2019) |
| | | |

| 01/28/2019 | 28 | Preliminary Exhibit List , filed by Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (McNamar, Eric) Modified on 1/29/2019 - Edited title(NAD). (Entered: 01/28/2019) |
|---|---|---|
| 01/28/2019 | 29 | Preliminary Witness List , filed by Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA. (McNamar, Eric) Modified on 1/29/2019 - Added Preliminary to title(NAD). (Entered: 01/28/2019) |
| 01/28/2019 | 30 | Preliminary Witness List , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) Modified on 1/29/2019 - Added Preliminary to title (NAD). (Entered: 01/28/2019) |
| 01/28/2019 | 31 | Preliminary Exhibit List , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) Modified on 1/29/2019 - Added Preliminary to title (NAD). (Entered: 01/28/2019) |
| 01/28/2019 | 32 | MOTION to Amend/Correct 11 Amended Complaint , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Second Amended Complaint, # 2 Exhibit Exhibit to Second Amended Complaint - Traveler's Final Estimate)(Beyers, William) (Entered: 01/28/2019) |
| 01/31/2019 | 33 | Submission of Proposed Order , re 32 MOTION to Amend/Correct 11 Amended Complaint , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 01/31/2019) |
| 01/31/2019 | 34 | ORDER granting 32 Motion to Amend Complaint - Plaintiff to submit its Amended Complaint as a separate docket entry within five (5) days. Signed by Magistrate Judge Matthew P. Brookman on 1/31/2019. (JRB) (Entered: 01/31/2019) |
| 02/05/2019 | 35 | AMENDED COMPLAINT *(Second)* against TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, filed by LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Travelers Final Estimate)(Beyers, William) (Entered: 02/05/2019) |
| 02/19/2019 | 36 | ANSWER to 35 Second Amended Complaint , filed by THE TRAVELERS INDEMNITY COMPANY OF AMERICA.(McNamar, Eric) Modified on 2/20/2019 - Edited to reflect Second Amended Complaint (NAD). (Entered: 02/19/2019) |
| 03/14/2019 | 37 | SCHEDULING ORDER - Having approved the Case Management Plan as submitted, the Court hereby sets the final pretrial conference on April 15, 2020 at 10:00 a.m. in Room 330, and the jury trial to begin on May 11, 2020 at 9:00 a.m. in Courtroom 344, Birch Bayh Federal Building and United States Courthouse, 46 East Ohio Street, Indianapolis, Indiana. The final pretrial conference is for attorneys only. At the final pretrial conference, Counsel shall be prepared to discuss the status of the action, including all matters requiring completion prior to trial. Counsel shall review the Court's Courtroom Procedures and Trial Practice. Signed by Judge Tanya Walton |

|  |  | Pratt on 3/14/2019.(NAD) (Entered: 03/14/2019) |
|---|---|---|
| 03/14/2019 | 38 | TRIAL PROCEDURES AND PRACTICES before Judge Tanya Walton Pratt. (NAD) (Entered: 03/14/2019) |
| 06/04/2019 | 40 | MINUTE ORDER for proceedings held before Magistrate Judge Matthew P. Brookman: Status Conference held on 6/3/2019. Section III of the Case Management Plan is amended as follows: C. Discovery shall be completed by August 30, 2019.Signed by Magistrate Judge Matthew P. Brookman. (TMB) (Entered: 06/04/2019) |
| 07/08/2019 | 41 | MOTION for Extension of Time to 9/10/19 and 10/10/19 in which to 20 Order: Case ManagementSet Deadlines/Hearings , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McNamar, Eric) (Entered: 07/08/2019) |
| 07/09/2019 | 42 | ORDER ON AGREED 41 MOTION FOR EXTENSION OF CERTAIN CASE MANAGEMENT DEADLINES - The deadline to complete non-expert witness discovery, discovery relating to liability issues is now CONTINUED up to and including September 10, 2019, and the deadline to file dispositive motions is CONTINUED up to and including October 10, 2019. Signed by Judge Tanya Walton Pratt on 7/9/2019.(NAD) (Entered: 07/09/2019) |
| 07/30/2019 | 43 | MOTION *(Joint) to Reschedule Settlement Conference*, filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McNamar, Eric) (Entered: 07/30/2019) |
| 07/31/2019 | 44 | SCHEDULING ORDER: Telephonic Status Conference set for 8/2/2019 at 11:30 AM (Eastern Time) before Magistrate Judge Matthew P. Brookman. The information needed by counsel to participate in this telephonic conference will be provided by a separate notification. Signed by Magistrate Judge Matthew P. Brookman on 7/31/2019.(JRB) (Entered: 07/31/2019) |
| 08/05/2019 | 46 | MINUTE ORDER for proceedings held before Magistrate Judge Matthew P. Brookman: Status Conference held on 8/2/2019. The Joint Motion to Reschedule the Settlement Conference (Docket No. 43 ) is GRANTED. The SETTLEMENT CONFERENCE set for August 6, 2019 is VACATED. Parties are ORDERED to engage in a private mediation on or before September 30, 2019. On or before August 15, 2019, parties shall file a Notice with the Court including the mediator's name and the date of the mediation. Within seven (7) days of the date of the mediation, the mediator shall file a Mediator's Report with the Court. Signed by Magistrate Judge Matthew P. Brookman. (TMB) (Entered: 08/05/2019) |
| 08/16/2019 | 47 | NOTICE *of Schedulnig Mediation*, filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA, re 46 Order on MotionStatus ConferenceTerminate Hearings. (McNamar, Eric) (Entered: 08/16/2019) |
| 09/04/2019 | 48 | MINUTE ORDER for proceedings held before Magistrate Judge Matthew P. |

| | | |
|---|---|---|
| | | Brookman: Discovery Conference held on 8/29/2019. Telephonic Discovery Conference set for 9/5/2019 at 10:30 AM (Eastern Time) before Magistrate Judge Matthew P. Brookman. Signed by Magistrate Judge Matthew P. Brookman. (TMB) (Entered: 09/04/2019) |
| 09/05/2019 | 50 | MINUTE ORDER for proceedings held before Magistrate Judge Matthew P. Brookman: Status Conference held on 9/5/2019. Parties were represented by counsel. No further orders are entered at this time. Signed by Magistrate Judge Matthew P. Brookman. (TMB) (Entered: 09/05/2019) |
| 09/10/2019 | 51 | Joint MOTION for Extension of Time to in which to 20 Order: Case ManagementSet Deadlines/Hearings , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McNamar, Eric) (Entered: 09/10/2019) |
| 09/12/2019 | 52 | ORDER ON JOINT MOTION FOR EXTENSION OF DEADLINES - This matter comes before the Court on the Parties' Joint Motion for Extension of Deadlines, and the Court being duly advised, now GRANTS said Motion. The deadline to complete non-expert witness discovery, discovery relating to liability issues is now CONTINUED up to and including October 10, 2019, the deadline to file dispositive motions is CONTINUED up to and including November 10, 2019, the deadline for Plaintiff's expert disclosures is CONTINUED up to and including October 10, 2019, and the deadline for Defendant's expert disclosures is CONTINUED up to and including November 10, 2019. Signed by Judge Tanya Walton Pratt on 9/12/2019. (NAD) (Entered: 09/12/2019) |
| 10/07/2019 | 53 | SCHEDULING ORDER: TELEPHONIC STATUS CONFERENCE on OCTOBER 23, 2019 at 3:00 p.m., Indianapolis time (EST), before the Honorable Matthew P. Brookman, United States Magistrate Judge. The information needed by counsel to participate in this telephonic conference will be provided by a separate notification. Signed by Magistrate Judge Matthew P. Brookman on 10/7/2019.(JRB) (Entered: 10/07/2019) |
| 10/08/2019 | 54 | MOTION for Extension of Time to various case management deadlines , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McNamar, Eric) (Entered: 10/08/2019) |
| 10/09/2019 | 55 | ORDER ON JOINT 54 MOTION FOR EXTENSION OF DEADLINES - Dispositive Motions due by 12/24/2019, Discovery due by 11/24/2019. (See Order for deadlines.) Signed by Judge Tanya Walton Pratt on 10/9/2019. (NAD) (Entered: 10/10/2019) |
| 10/23/2019 | 57 | MINUTE ORDER for proceedings held before Magistrate Judge Matthew P. Brookman: Status Conference held on 10/23/2019. Section IV of the Case Management Plan is amended as follows: Discovery shall be completed by December 20, 2019. Dispositive motions shall be filed according to the following briefing schedule: Defendant's Motion shall be filed by January 24, 2020. Plaintiff's Motion and Response shall be filed by February 24, 2020. Defendant's Response and Reply shall be filed by March 25, 2020. |

| | | |
|---|---|---|
| | | Plaintiff's Reply shall be filed by April 9, 2020. Telephonic Status Conference set for 1/13/2020 at 11:30 AM (Eastern Time) before Magistrate Judge Matthew P. Brookman. Signed by Magistrate Judge Matthew P. Brookman. (TMB) (Entered: 10/23/2019) |
| 10/25/2019 | 58 | MOTION *to Order Parties to Appraisal*, filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Insurance Policy, # 2 Text of Proposed Order Proposed Order)(Beyers, William) (Entered: 10/25/2019) |
| 10/29/2019 | 59 | MOTION */Notice to Reply to Plaintiff's Motion to Order Parties to Appraisal and Request for Telephonic Conference*, filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McNamar, Eric) (Entered: 10/29/2019) |
| 10/31/2019 | 60 | ORDER denying 59 Motion of NOTICE OF INTENT TO REPLY TO PLAINTIFF'S MOTION TO ORDER PARTIES TO APPRAISAL AND REQUEST FOR TELEPHONIC CONFERENCE. SEE ORDER. Signed by Magistrate Judge Matthew P. Brookman on 10/31/2019. (JRB) (Entered: 10/31/2019) |
| 11/07/2019 | 61 | RESPONSE in Opposition re 58 MOTION *to Order Parties to Appraisal* , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Exhibit 1-9/10/19 Email from Pl's Counsel)(McNamar, Eric) (Entered: 11/07/2019) |
| 11/14/2019 | 62 | REPLY in Support of Motion re 58 MOTION *to Order Parties to Appraisal* , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Sales Representative Testimony, # 2 Exhibit Payment Letter)(Beyers, William) (Entered: 11/14/2019) |
| 11/22/2019 | 63 | Witness List */Expert Disclosures*, filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 11/22/2019) |
| 12/24/2019 | 64 | NOTICE *of Service of Defendant's Expert Disclosures*, filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA (McNamar, Eric) (Entered: 12/24/2019) |
| 12/27/2019 | 65 | Witness List , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 12/27/2019) |
| 12/27/2019 | 66 | Exhibit List , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 12/27/2019) |
| 12/30/2019 | 67 | Exhibit List , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Fortin, Matthew) (Entered: 12/30/2019) |
| 12/30/2019 | 68 | Witness List , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Fortin, Matthew) (Entered: 12/30/2019) |
| 01/16/2020 | 70 | MINUTE ORDER for proceedings held before Magistrate Judge Matthew P. |

| | | Brookman: Status Conference held on 1/13/2020. Parties were represented by counsel. No further orders are entered at this time. Signed by Magistrate Judge Matthew P. Brookman. (TMB) (Entered: 01/16/2020) |
| --- | --- | --- |
| 01/24/2020 | 71 | MOTION for Summary Judgment , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Fortin, Matthew) (Entered: 01/24/2020) |
| 01/24/2020 | 72 | BRIEF/MEMORANDUM in Support re 71 MOTION for Summary Judgment , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Fortin, Matthew) (Entered: 01/24/2020) |
| 01/24/2020 | 73 | Designation of Evidence re 72 Brief/Memorandum in Support *of Motion for Summary Judgment*, filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Exhibit 1 - Answer to 2nd Am Compl, # 2 Exhibit 2 - Cox Dep Tr, # 3 Exhibit 3 - Insurance Policy, # 4 Exhibit 4 - Kassen Dep Tr, # 5 Exhibit 5 - Poland Dep Tr, # 6 Exhibit 6 - Porth Ltr Report, # 7 Exhibit 7 - 09 11 17 Email, # 8 Exhibit 8 - Swords Dep Tr, # 9 Exhibit 9 - 09 22 16 Public Adjuster Contract, # 10 Exhibit 10 - 10 06 16 Email, # 11 Exhibit 11 - Knopp Affidavit, # 12 Exhibit 12 - 11 03 16 Email, # 13 Exhibit 13 - 09 28 17 Email, # 14 Exhibit 14 - 10 18 17 Email and Estimate, # 15 Exhibit 15 - 10 19 17 Email and Estimate, # 16 Exhibit 16 - 10 24 17 Email, # 17 Exhibit 17 - 02 07 18 Email and Estimate, # 18 Exhibit 18 - 02 13 18 Email, # 19 Exhibit 19 - Itel Report, # 20 Exhibit 20 - 04 13 18 Email, # 21 Exhibit 21 - 04 26 18 Email, # 22 Exhibit 22 - 05 11 18 Email, # 23 Exhibit 23 - Various Emails, # 24 Exhibit 24 - 06 06 18 Email, # 25 Exhibit 25 - Complaint)(Fortin, Matthew) (Entered: 01/24/2020) |
| 02/07/2020 | 74 | ***PLEASE DISREGARD WITHDRAWN BY 78 *** MOTION to Compel *Spartan Claims, LLC's Response to Non-Party Discovery* (), filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Exhibit 1-11/27/19 Email from Atty Miller to Opposing Counsel Non-Party Request to Spartan, # 2 Exhibit 2-11/30/19 Email From Atty McNamar and Non-Party Request to Spartan, # 3 Exhibit 3-1/13.20 Email from Atty McNamar and Non-Party Request to Spartan, # 4 Exhibit 4-1/23/20 Email from Atty Fortin regarding status of Response to Request for Production, # 5 Text of Proposed Order)(McNamar, Eric) Modified on 2/10/2020 - Edited docket text to match caption (NAD). Modified on 3/10/2020 (JRB). (Entered: 02/07/2020) |
| 02/19/2020 | 75 | Joint MOTION *for Extension of Deadlines*, filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Text of Proposed Order Proposed Order)(Beyers, William) (Entered: 02/19/2020) |
| 02/20/2020 | 76 | ORDER ON JOINT 75 MOTION FOR CONTINUATION OF TRIAL DATE AND AMENDING CASE MANAGEMENT DEADLINES - The deadline to complete non-expert witness discovery, discovery relating to liability issues, expert witness discovery and discovery relating to damages are now CONTINUED up to and including June 1, 2020; the final pretrial conference is now set for November 10, 2020 at 9:00 a.m. in Courtroom 344; |

| | | |
|---|---|---|
| | | and the jury trial will now begin on December 7, 2020 at 9:00 a.m. in Courtroom 344. The court also extends the dispositive motion briefing schedule to: March 23, 2020 for Plaintiff to file a counter motion for summary judgment and response. Defendant's Response will be due April 20, 2020. Plaintiff's Reply will be due May 12, 2020. Signed by Judge Tanya Walton Pratt on 2/20/2020.(NAD) (Entered: 02/21/2020) |
| 03/06/2020 | 77 | MOTION to Withdraw 74 MOTION to Compel *Spartan Claims, LLC's Response to Non-Party Discovery, filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McNamar, Eric) Modified text on 3/9/2020 (TMB). (Entered: 03/06/2020)* |
| 03/10/2020 | 78 | ORDER GRANTING 77 Motion to Withdraw 74 Motion to Compel - SEE ORDER. Signed by Magistrate Judge Matthew P. Brookman on 3/10/2020. (JRB) (Entered: 03/10/2020) |
| 03/23/2020 | 79 | RESPONSE in Opposition re 71 MOTION for Summary Judgment , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 03/23/2020) |
| 03/23/2020 | 80 | Designation of Evidence re 79 Response in Opposition to Motion *for Summary Judgment*, filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Knopp Deposition, # 2 Exhibit Hurwitz Affidavit, # 3 Exhibit Final Letter From Travelers, # 4 Exhibit Estimate of Loss, # 5 Exhibit Aaron Poland Report, # 6 Exhibit Bauer Deposition)(Beyers, William) (Entered: 03/23/2020) |
| 04/14/2020 | 81 | ORDER granting 58 Motion to Order Parties to Appraisal - The parties are ordered to commence the appraisal process as outlined in the Policy within 14 days of the date of this Entry. SEE ORDER. Signed by Magistrate Judge Matthew P. Brookman on 4/14/2020. (JRB) (Entered: 04/14/2020) |
| 04/20/2020 | 82 | REPLY in Support of Motion re 71 MOTION for Summary Judgment , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (McNamar, Eric) (Entered: 04/20/2020) |
| 04/28/2020 | 83 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by THE TRAVELERS INDEMNITY COMPANY OF AMERICA re 81 Order on Motion (McNamar, Eric) (Entered: 04/28/2020) |
| 05/12/2020 | 84 | RESPONSE in Opposition re 83 APPEAL OF MAGISTRATE JUDGE DECISION to District Court by THE TRAVELERS INDEMNITY COMPANY OF AMERICA re 81 Order on Motion , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Email Nominating Appraisers, # 2 Exhibit Aaron Poland Report, # 3 Text of Proposed Order Order Overruling Objections) (Beyers, William) (Entered: 05/12/2020) |
| 05/19/2020 | 85 | REPLY in Support of Motion re 83 APPEAL OF MAGISTRATE JUDGE DECISION to District Court by THE TRAVELERS INDEMNITY |

| | | |
|---|---|---|
| | | COMPANY OF AMERICA re 81 Order on Motion *to Order Parties to Appraisal*, filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Exhibit)(McNamar, Eric) (Entered: 05/19/2020) |
| 10/06/2020 | 86 | ENTRY ON DEFENDANT'S 71 MOTION FOR SUMMARY JUDGMENT AND 83 APPEAL OF THE MAGISTRATE JUDGE'S DECISION - The Court holds that Legend's Creek failed to comply with the suit limitation provision of the Policy. Legend's Creek was represented by a public adjuster, consulted with counsel during the claim process, had a copy of the policy and was aware that it had two years from the date of loss to commence legal action, yet never requested an extension of time to file suit and failed to file suit within the time frame required in the contract. Accordingly, it has no right to relief under that contract. Therefore, Travelers' Motion for Summary Judgment, ( Filing No. 71 ), is GRANTED as to Legend's Creek's claims for breach of contract and bad faith. As that ruling resolves this suit, there is no need to continue the process of appraisal. Accordingly, Travelers' Appeal of the Magistrate Judge's Order, (Filing No. 83 ), is also GRANTED. The Court will issue final judgment in a separate order. (See Order.) Signed by Judge Tanya Walton Pratt on 10/6/2020. (NAD) (Entered: 10/06/2020) |
| 10/06/2020 | 87 | FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58 - The Court having this day made its Entry directing the entry of final judgment, the Court now enters FINAL JUDGMENT. For the reasons detailed in the Court's Entry on Pending Motions, the Court now enters FINAL JUDGMENT in this action in favor of Defendant Travelers Indemnity Company on Plaintiffs' claims for breach of contract and bad faith. Therefore, Plaintiff Legend's Creek Homeowners Association, Inc. shall take nothing by its Complaint. Judgment is entered accordingly, and this cause is TERMINATED. Signed by Judge Tanya Walton Pratt on 10/6/2020.(NAD) (Entered: 10/06/2020) |
| 10/13/2020 | 88 | BILL OF COSTS by THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Exhibit 1-Fees of Court, # 2 Exhibit 2-Deposition Transcripts)(Ponzi, Matthew) (Entered: 10/13/2020) |
| 10/22/2020 | 89 | First MOTION *for Disallowance re Defendant's 88 Bill of Costs*, filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Text of Proposed Order Order Partially Denying Bill of Costs)(Beyers, William) Modified on 10/23/2020 - added link to 88 (NAD). (Entered: 10/22/2020) |
| 11/03/2020 | 90 | First MOTION for Reconsideration re 87 Closed Judgment, 86 Order on Motion for Summary JudgmentOrder on Appeal of Magistrate Judge Decision to District Court , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Exhibit 1 - Appraisal Award, # 2 Exhibit Exhibit 2 - Emails re Appraisal Award, # 3 Exhibit Exhibit 3 - Check, # 4 Exhibit Exhibit 4 - Appraisal Letter From Opposing Counsel, # 5 Exhibit Exhibit 5 - Match Email From Panel, # 6 Exhibit Exhibit 6 - Affidavit of DEM, # 7 Exhibit Exhibit 7 - Legends Creek |

| | | |
|---|---|---|
| | | HOA Inc - Invoice - # - 1670, # 8 Exhibit Exhibit 8 - Stop Payment, # 9 Text of Proposed Order Order Granting Plaintiff's Motion to Amend or Alter Judgment)(Beyers, William) (Entered: 11/03/2020) |
| 11/03/2020 | 91 | BRIEF/MEMORANDUM in Support re 90 First MOTION for Reconsideration re 87 Closed Judgment, 86 Order on Motion for Summary JudgmentOrder on Appeal of Magistrate Judge Decision to District Court , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 11/03/2020) |
| 11/03/2020 | 92 | First MOTION to Set Aside Judgment re 86 87 , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Attachments: # 1 Exhibit Exhibit 1 - Appraisal Award, # 2 Exhibit Exhibit 2 - Emails re Appraisal Award, # 3 Exhibit Exhibit 3 - Check, # 4 Exhibit Exhibit 4 - Appraisal Letter From Opposing Counsel, # 5 Exhibit Exhibit 5 - Legends Creek HOA Inc - Invoice - # - 1670, # 6 Exhibit Exhibit 6 - Stop Payment, # 7 Text of Proposed Order Order Granting Motion to Set Aside Judgment)(Beyers, William) Modified on 11/3/2020 to add links for counsel (KAA). (Entered: 11/03/2020) |
| 11/03/2020 | 93 | BRIEF/MEMORANDUM in Support re 92 First MOTION to Set Aside Judgment , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 11/03/2020) |
| 11/04/2020 | 94 | NOTICE OF APPEAL as to 87 Closed Judgment, 86 Order on Motion for Summary JudgmentOrder on Appeal of Magistrate Judge Decision to District Court, filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Filing fee $505, receipt number 0756-6260881) (Miller, David) (Entered: 11/04/2020) |
| 11/04/2020 | 95 | DOCKETING STATEMENT by LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC. re 94 Notice of Appeal (Miller, David) (Entered: 11/04/2020) |
| 11/05/2020 | 96 | PARTIES' SHORT RECORD re 94 Notice of Appeal - **Instructions for Attorneys/Parties attached.** (LBT) (Entered: 11/05/2020) |
| 11/05/2020 | 97 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 94 Notice of Appeal. **- for Court of Appeals Use Only.** (LBT) (Entered: 11/05/2020) |
| 11/06/2020 | 98 | USCA Case Number 20-3163 for 94 Notice of Appeal filed by LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC. (LBT) (Entered: 11/06/2020) |
| 11/13/2020 | 99 | MOTION for Extension of Time to File Response to November 24, 2020 re 92 First MOTION to Set Aside Judgment , 90 First MOTION for Reconsideration re 87 Closed Judgment, 86 Order on Motion for Summary JudgmentOrder on Appeal of Magistrate Judge Decision to District Court , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McNamar, Eric) |

| | | |
|---|---|---|
| | | (Entered: 11/13/2020) |
| 11/16/2020 | 100 | ORDER - granting 99 Motion for Extension of Time to File Response to 11/24/2020 re 90 First MOTION for Reconsideration re 87 Closed Judgment, 86 Order on Motion for Summary Judgment Order on Appeal of Magistrate Judge Decision to District Court , 92 First MOTION to Set Aside Judgment . IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant Travelers is granted a period of time through and including November 24, 2020, in which to respond to Plaintiff's Motions. Signed by Judge Tanya Walton Pratt on 11/16/2020.(NAD) (Entered: 11/16/2020) |
| 11/24/2020 | 101 | RESPONSE in Opposition re 92 First MOTION to Set Aside Judgment , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (McNamar, Eric) (Entered: 11/24/2020) |
| 11/24/2020 | 102 | RESPONSE in Opposition re 90 First MOTION for Reconsideration re 87 Closed Judgment, 86 Order on Motion for Summary JudgmentOrder on Appeal of Magistrate Judge Decision to District Court , filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (McNamar, Eric) (Entered: 11/24/2020) |
| 12/01/2020 | 103 | REPLY in Support of Motion re 90 First MOTION for Reconsideration re 87 Closed Judgment, 86 Order on Motion for Summary JudgmentOrder on Appeal of Magistrate Judge Decision to District Court , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 12/01/2020) |
| 12/01/2020 | 104 | REPLY in Support of Motion re 92 First MOTION to Set Aside Judgment , filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (Beyers, William) (Entered: 12/01/2020) |
| 01/27/2021 | 105 | ORDER - The Court's ruling on Defendant's Bill of Costs (Dkt. 88 ) and Plaintiff's Motion for Disallowance (Dkt. 89 ) is stayed pending a ruling on Plaintiff's appeal to the Seventh Circuit Court of Appeals. Signed by Judge Tanya Walton Pratt on 1/27/2021.(NAD) (Entered: 01/27/2021) |
| 01/29/2021 | 106 | MOTION to Withdraw Attorney Appearance *of Matthew P. Fortin*, filed by Defendant THE TRAVELERS INDEMNITY COMPANY OF AMERICA. (Attachments: # 1 Text of Proposed Order)(McNamar, Eric) (Entered: 01/29/2021) |
| 01/29/2021 | 107 | ENTRY ON PLAINTIFF'S 90 MOTION TO AMEND OR ALTER JUDGMENT - To be sure, the first page of the Court's summary judgment entry reads that "the Court denies Travelers' Appeal of the Magistrate Judge's Decision because that issue is moot," while page twenty and the docket entry state that "Travelers' Appeal of the Magistrate Judge's Order, (Filing No. 83 ), is also GRANTED." (Filing No. 86 .) The first page of the summary judgment entry contains a scrivener's error and, consistent with the rationale expressed throughout the entry, should instead read that "the Court grants Traveler's Appeal of the Magistrate Judge's Decision". That correction will be made, but because the docket entry (and the entry's conclusion section) |

| | | |
|---|---|---|
| | | accurately reflects the disposition of that motion, the Court need not reconsider its entry on this minor typographical error. For the preceding reasons, the Court DENIES the Motion to Amend or Alter Judgment filed by Legend's Creek (Filing No. 90 ). (See Order.) Signed by Judge Tanya Walton Pratt on 1/29/2021. (NAD) **Emailed to USCA re #20-3163** Modified on 2/1/2021 (LBT). (Entered: 01/29/2021) |
| 01/29/2021 | 108 | AMENDED ENTRY ON DEFENDANT'S 71 MOTION FOR SUMMARY JUDGMENT AND 83 APPEAL OF THE MAGISTRATE JUDGE'S DECISION. The Court holds that Legend's Creek failed to comply with the suit limitation provision of the Policy. Legend's Creek was represented by a public adjuster, consulted with counsel during the claim process, had a copy of the policy and was aware that it had two years from the date of loss to commence legal action, yet never requested an extension of time to file suit and failed to file suit within the time frame required in the contract. Accordingly, it has no right to relief under that contract. Therefore, Travelers' Motion for Summary Judgment, (Filing No. 71 ), is GRANTED as to Legend's Creek's claims for breach of contract and bad faith. As that ruling resolves this suit, there is no need to continue the process of appraisal. Accordingly, Travelers' Appeal of the Magistrate Judge's Order, (Filing No. 83 ), is also GRANTED. The Court will issue final judgment in a separate order. (See Order.) Signed by Judge Tanya Walton Pratt on 1/29/2021. (NAD) **Emailed to USCA re #20-3163** Modified on 2/1/2021 (LBT). (Entered: 01/29/2021) |
| 02/01/2021 | 109 | ORDER ON 106 MOTION TO WITHDRAW AS COUNSEL - Travelers Casualty Insurance Company of America ("Travelers"), having filed its Motion to Withdraw as Counsel Matthew P. Fortin, formerly of Foran Glennon Palandech Ponzi & Rudloff PC, as counsel of record for Travelers, and the Court having considered the same, now GRANTS the Motion. Signed by Judge Tanya Walton Pratt on 2/1/2021. (NAD) (Entered: 02/01/2021) |
| 02/12/2021 | 110 | Amended NOTICE OF APPEAL as to 107 Order on Motion for Reconsideration, 108 Entry, filed by Plaintiff LEGEND'S CREEK HOMEOWNERS ASSOCIATION, INC.. (No fee paid with this filing) (Miller, David) Modified on 2/16/2021 - edited docket to match caption of document(NAD). (Entered: 02/12/2021) |

**Case #: 1:18-cv-02782-TWP-MPB**